IN THE MATTER OF ATTORNEY BARRY NAKELL

No. 9016SC403

(Filed 17 December 1991)

1. **Contempt of Court § 21 (NCI4th)— disruption of court by attorney—criminal contempt hearing—refusal to recuse**

    The trial judge did not err by denying Nakell's motion for the judge to recuse himself from a criminal contempt hearing where the contempt was committed before the judge but the record reveals no bias, prejudice, or proof that would require the judge to recuse himself from conducting a hearing. The interview with the press cited by Nakell as an indication of bias occurred after the finding of contempt.

    **Am Jur 2d, Contempt §§ 187, 188, 190, 191.**

    **Disqualification of judge in state proceedings to punish contempt against or involving himself in open court and in his actual presence. 37 ALR4th 1004.**

2. **Contempt of Court § 15 (NCI4th)— criminal contempt—hearing two days after incident—substantially contemporaneous**

    A criminal contempt hearing was substantially contemporaneous as required by N.C.G.S. § 5A-14 where the conduct occurred late in the afternoon of 14 November 1989; at the request of the person charged with contempt, Nakell, the court gave Nakell a specification of contempt and set a hearing for Nakell to return for a further consideration of the matter on 16 November at 2:30 p.m.; and it is clear that the hearing on 16 November was in continuation and was substantially contemporaneous with the events of 14 November.

    **Am Jur 2d, Contempt § 217.**

3. **Contempt of Court § 24 (NCI4th)— criminal contempt— obstruction of proceeding by attorney—sufficiency of evidence**

    The arguments of a criminal contempt defendant, attorney Nakell, relating to the court's refusal to hear Nakell were meritless where his argument was based on the premise that Hatcher was Nakell's client and there was nothing in the record to support that assumption. The record demonstrates conclusively that Nakell did not represent Hatcher, that Nakell did not

**IN RE NAKELL**

[104 N.C. App. 638 (1991)]

have a client, and that Nakell was an interloper at the time he entered the courtroom and seated himself beside Hatcher.

**Am Jur 2d, Contempt §§ 67, 193, 208.**

4. **Contempt of Court § 24 (NCI4th)— criminal contempt— disruption of proceeding by attorney—sufficiency of findings**

Although a criminal contempt defendant, attorney Nakell, contended that the findings and the evidence failed to support the trial judge's conclusions that Nakell willfully disobeyed the court, intended that his conduct should be disruptive, and in fact disrupted the proceeding and impaired the respect due the court, the record manifests that Nakell intended to disrupt the proceeding when he, as an interloper, continually interrupted the proceeding by attempting to argue matters not then being considered; the trial judge repeatedly ordered Nakell to sit down and be quiet; Nakell nevertheless willfully disobeyed the order and continued to interfere and disrupt the proceeding; Nakell's language, conduct and attitude precipitated a violent outburst from Hatcher and applause from Hatcher's supporters in the courtroom; and Hatcher's outbursts halted the proceeding and he had to be removed from the courtroom, bound and gagged.

**Am Jur 2d, Contempt §§ 67, 212, 213.**

APPEAL by defendant Barry Nakell from Lake (I. Beverly, Jr.), Judge. Order entered 17 November 1989 in Superior Court, ROBESON County. Heard in the Court of Appeals 19 August 1991.

Barry Nakell (hereinafter "Nakell"), a member of the North Carolina State Bar and a professor at the University of North Carolina School of Law, was held in direct criminal contempt as a result of his conduct in a proceeding before Judge I. Beverly Lake, Jr. on 14 November 1989.

The record discloses the following: On 26 January 1989, Judge Anthony Brannon entered an order which transferred the cases and legal representation of defendant Eddie Hatcher (hereinafter "Hatcher") to Angus Thompson, Chief Public Defender of the 16th Judicial District. On 5 September 1989, Judge Robert Farmer entered an order which stated that the Public Defender of Judicial District 16B was the only counsel of record for Hatcher, and that out-of-state attorneys William M. Kunstler and Ronald Kuby had never been

IN RE NAKELL

[104 N.C. App. 638 (1991)]

properly admitted to practice *pro hac vice* or acquired eligibility to appear in this case and thus were not permitted to represent Hatcher in any proceeding or trial of his case. On 6 September 1989, Judge Farmer entered an order which stated that if Hatcher planned to represent himself without the assistance of counsel that he be returned to the court for inquiry pursuant to G.S. 15A-1242 prior to any further proceeding. That order also stated that Angus Thompson, Public Defender of Judicial District 16B, was counsel of record for Hatcher until the court received in writing from Hatcher a statement that he planned to represent himself and did not wish to have the services of the Public Defender, or that he had retained counsel licensed in North Carolina along with the name and address and a notice of a general appearance filed by said attorney with the court. On 16 October 1989, Judge Farmer entered an order which stated that G.S. 84-4.1 had not been complied with and the court was without power to allow or reject the applications or motions by the said out-of-state attorneys to appear in Hatcher's case, and that the Public Defender of Judicial District 16B was still counsel of record for Hatcher.

On 14 November 1989, a pre-trial hearing was held by Judge Lake in the Superior Court, *State of North Carolina v. Hatcher*, to consider a motion by Hatcher to represent himself, as well as defendant's motion for reconsideration of the order removing counsel from the defense team. At the hearing, Hatcher was represented by the Public Defender, Angus Thompson. After the hearing began, Nakell entered the courtroom and sat beside Hatcher. While Judge Lake was explaining the "predicate" for the hearing, Nakell, who did not represent Hatcher, interrupted and stated:

MR. NAKELL: Your Honor, before the Court addresses that, may I be heard briefly? My name is Barry Nakell, Your Honor."

THE COURT: "No, sir, not at this—not at this time."

THE DEFENDANT: "May I be heard, Your Honor?"

THE COURT: "No sir, not at this point."

THE DEFENDANT: "I would like to ask—

THE COURT: I said no, sir, not at this point.

THE DEFENDANT: But I will be allowed to be heard, won't I?

IN RE NAKELL ·

[104 N.C. App. 638 (1991)]

THE COURT: Yes, sir.

THE DEFENDANT: I appreciate that. Thank you.

Judge Lake continued to state the "predicate" and the order for consideration of matters before the court. Nakell again interrupted and asked to be heard regarding a notice of limited appearance he filed for the proceeding that morning. Judge Lake stated: "As I have already indicated, [the notice] is not in compliance in this Court's considered opinion with the order of September 6th entered by Judge Farmer." Judge Lake and Nakell continued to discuss the prior orders briefly, concluding with the following interchange:

THE COURT: No sir, Mr. Nakell, I'm not going to hear you.

MR. NAKELL: But I simply want to point out, Judge, that there are —

THE COURT: I said I'm not going to hear you. Sit down. Sit down.

THE DEFENDANT: Stand.
Well, if he ain't going to be heard, I'm going to be heard.

THE COURT: The only attorney of record —

THE DEFENDANT: What was the ex parte conference you had with the district attorney prior to this hearing? An ex parte conference you and Mr. Townsend had?

THE COURT: Do you want to be removed from this courtroom?

MR. NAKELL: Your Honor, I simply want to point out that the difficulty in that perspective is that there are two orders. There are conflicting orders in this case.

THE COURT: I said sit down. Mr. Nakell. That's a direct order from the Court.

MR. NAKELL: Your Honor —

THE DEFENDANT: Argue.

THE COURT: Do you want to be held in direct criminal contempt of this Court?

THE DEFENDANT: This is not a court, you're a racist, segregated, son-of-a-bitch you.

**IN RE NAKELL**

[104 N.C. App. 638 (1991)]

THE COURT: Mr. Nakell.

MR. NAKELL: Your Honor, in a very polite manner, I'm simply trying to be of assistance to the Court.

THE COURT: I am directing you specifically to sit down and be quiet.

At this point in the hearing, the Public Defender and Hatcher questioned Judge Lake about the prior orders in the case. The trial judge warned Hatcher that if he continued to "insist on interrupting the Court, I'll sit you down in that chair and I'll have you bound and gagged." The Public Defender resumed addressing the previous order, and Nakell again interrupted to give his opinion on this matter. After some discussion with the court, the following exchange took place:

THE COURT: Judge Farmer, Mr. Nakell—and, again, I'm going to direct you not to interrupt me now. If you want to—

MR. NAKELL: I'm sorry. I thought you had finished, Your Honor.

THE COURT: If you want to pose a question to the Court, you do so through Mr. Thompson.

MR. NAKELL: Your Honor, I'm—I'm a little bit in limbo in this because Judge Farmer did not address the question of my participation.

THE COURT: Well, I am doing so.

MR. NAKELL: I don't understand any basis—

THE COURT: I am doing so now. The Court does not recognize your representation of this defendant.

MR. NAKELL: May I inquire, Your Honor, about the basis for that so that I can understand—

THE COURT: Judge Farmer's order.

MR. NAKELL: —what I need to do?

THE COURT: Judge Farmer's order.

THE DEFENDANT: You said his order was only in effect while he was here. He's gone. That's what you said.

THE COURT: Judge Farmer's order.

## IN RE NAKELL

[104 N.C. App. 638 (1991)]

MR. NAKELL: Judge Farmer, Your Honor, in open court in the hearing on September the 5th did, in fact, say something about my not being able to appear; but none of his written orders addressed my participation in the case at all, and I don't understand any basis for precluding me—

THE COURT: Well, let me see if I can make you understand, Mr. Nakell. I am denying your request for a limited appearance on behalf of this defendant and I'm directing you to sit down and be quiet and not say another word to the Court except if you want to say something, do it through Mr. Thompson.

MR. NAKELL: All right. Mr. Thompson, would you inquire about the basis—legal basis for a licensed North Carolina attorney from appearing on behalf of a defendant in a criminal case in association with a public defender—

THE COURT: Mr. Nakell.

MR. NAKELL: —to assist on—

THE DEFENDANT: I'll fuck you.

MR. NAKELL: Would you make that inquiry, Mr. Thompson?

THE DEFENDANT: Make that inquiry please, Mr. Thompson.

THE COURT: All right. Mr. Bailiff, remove this man from the courtroom and hold him for further action by the Court.

Nakell was escorted from the courtroom, at which point Hatcher threw a pen at the bench and said, "Cite me. Hit me with something." Judge Lake replied, "All right. Mr. Bailiff." Hatcher retorted, "You son of a bitch'n, racist, motherfucker—." Judge Lake then asked the court reporter to take note that Hatcher had thrown something at the bench and requested the bailiff to take Hatcher out and have him bound and gagged.

At the conclusion of the pre-trial hearing, Nakell was brought back to the courtroom and advised by the court of the following specific conduct considered to be in direct criminal contempt: (1) refusal to sit down after a direct order to do so; (2) refusal to be quiet after a direct order to do so; (3) continual interruption of the presiding judge by speaking over the voice of the court; (4) disrupting the court proceedings; (5) unduly prolonging the court proceedings; and (6) pandering to the courtroom audience and encouraging Hatcher to be disruptive to the court. Judge Lake directed

defendant to return and respond to the charges by the court on 16 November 1989.

At the hearing on 16 November 1989, Nakell moved the trial court to continue the matter so as to "place it before another judge." The court denied the motion, noting that the proceeding was a continuation of the hearing on 14 November 1989 which "could have been summarily adjudicated and determined by the court at that time," but in deference to Nakell, was continued until 16 November 1989 to afford Nakell notice and an opportunity to be heard.

Thereafter, Judge Lake made findings of fact and conclusions of law which except where quoted are summarized as follows: That on 14 November 1989, Hatcher appeared with court-appointed counsel, Mr. Angus Thompson, the Public Defender, and Assistant Public Defender Freda Bowman. The State was represented by District Attorney Richard Townsend. The court also found that while recognizing the persons present representing the various parties, and beginning to "state the predicate" for the hearing, Nakell entered the courtroom, approached and sat at counsel table with Hatcher.

The court found that while attempting to "state the predicate" and the court's understanding of the previous orders entered in the case and while trying to establish the order for consideration of the matters before the court, Nakell addressed Judge Lake at least three times and "was told by the Court, (following the initial communication that he would not be heard at that time) to sit down and be quiet with the Court specifically warning the Respondent [Nakell] against direct criminal contempt." The court further found that Nakell "on at least three occasions refused to do so and continued to address the Court . . . all of which considerably delayed the Court and interrupted the Court's statement of the predicate or matters before the Court and the order in which the Court desired to hear them." Judge Lake also found "that it was made abundantly clear on several occasions to Mr. Nakell that the Court was recognizing Attorney Angus Thompson as the only attorney of record for the Defendant, Eddie Hatcher, and that the Court was not recognizing Mr. Nakell, and was not accepting his limited appearance" because it did not comply with the 6 September order entered by Judge Farmer.

The court also found "that there was not and could not have been any misunderstanding in the mind of Mr. Nakell as to the Court's ruling and that he was not being recognized by the Court and that the Court desired him to sit down and be quiet." The findings state that after Judge Lake reaffirmed the orders of Judge Farmer and made clear that Mr. Nakell did not have standing in the court, that Nakell "completely ignored the Court's ruling and further proceeded to address the court and make arguments . . . . ." The court again ordered Nakell to sit down and directed him not to interrupt. Nakell was then specifically directed to make any communication to the court through the Public Defender, and Judge Lake found that from his observation and in light of the foregoing findings, that "Nakell fully understood what was said to him by the court and the import of that directive." Judge Lake found that thereafter Nakell again interrupted and the court advised him that it was denying his request for a limited appearance and directed Nakell to sit down and be quiet and not say another word to the court except through the Public Defender. The court further found that Nakell did not sit down, turned sideways to the Public Defender, and in the same tone of voice and with the same volume asked the same repeated question and argument regarding the legal basis for the ruling which had already been explained to him. When Judge Lake tried to interject, the findings state that Nakell refused to heed the court and continued with his statement to the court while looking at the Public Defender.

Judge Lake found at that point, with the court directing the bailiff to remove Nakell, Nakell made a statement to the Public Defender which resulted in substantial applause from the supporters of Hatcher in the audience. The effect on Hatcher of Nakell's statement was further obscenities directed toward the court followed by Hatcher resorting to violence with an attack upon the court by throwing a pen or some other object which struck the bench. The court also found that upon close and direct observation of the entire sequence of events, that the conduct of Nakell, including the tone and volume of his voice and expression on his face, was the direct cause of the disturbance and applause from the audience and was the direct cause of Hatcher's behavior in exceeding his previous attacks on the court by his language and launching into a violent attack upon the court. Judge Lake concluded by finding that all of the foregoing occurred in the direct view and observation of the court, that the conduct of Nakell was "willfully

contemptuous, was deliberate and calculated and designed to disrupt the proceedings of the court," and that the foregoing acts of Nakell "were preceded by numerous distinct, direct and clear warnings by the Court that the conduct was improper."

Based on these findings of fact, the court made the following conclusions of law:

1. The conduct of Attorney Barry Nakell constituted willful behavior committed during the sitting of a Court and directly tended to interrupt its proceedings.

2. The conduct of Attorney Barry Nakell constituted willful behavior committed during the sitting of a Court in its immediate view and presence and directly tended to impair the respect due the authority of the Court.

3. The conduct of Attorney Barry Nakell constituted willful disobedience of and resistance to or interference with a Court's lawful direction and order.

The court found Nakell guilty of direct criminal contempt in violation of G.S. 5A-11(a). From a judgment imposing a fine of $500 and imprisonment for ten days in the custody of the Sheriff of Robeson County, defendant appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General John H. Watters, and Assistant Attorney General David F. Hoke, for the State.*

*Smith, Patterson, Follin, Curtis & James, by Norman B. Smith, for defendant, appellant.*

HEDRICK, Chief Judge.

[1] Nakell first contends Judge Lake erred in denying his motion for the judge to recuse himself from the hearing on 16 November 1989. Nakell argues that "North Carolina statutory and case law establish that a judge *must* disqualify himself upon motion of a party if he is unable to render an impartial decision because of prejudice or a reasonable suspicion of his impartiality."

G.S. 15A-1223(b) in pertinent part provides:

A judge on motion of the State or the defendant, must disqualify himself from presiding over a criminal trial or other criminal proceeding if he is: (1) prejudiced against the moving

party or in favor of the adverse party; or . . . (4) for any
other reason unable to perform the duties required of him
in an impartial manner.

The standard to be applied when a defendant makes a motion
that a judge be recused places "the burden on the party moving
for disqualification to demonstrate objectively that grounds for
disqualification actually exist. Such a showing must consist of substan-
tial evidence that there exists such a personal bias, prejudice or
interest on the part of the judge that he would be unable to rule
impartially." *State v. Fie*, 320 N.C. 626, 627, 359 S.E.2d 774, 775
(1987). Due process standards require that where the trial judge
is so embroiled in a controversy with the defendant that there
is a likelihood of bias or an appearance of bias, the judge may
be "unable to hold the balance between vindicating the interests
of the court and the interests of the accused," and should recuse
himself from the proceeding. *In re Paul*, 28 N.C. App. 610, 618,
222 S.E.2d 479, 484, *cert. denied*, 289 N.C. 614, 223 S.E.2d 767
(1976), *citing, Ungar v. Sarafite*, 376 U.S. 575, 11 L.Ed. 921 (1964).

In the present case Judge Lake addressed the issue of his
personal involvement at the proceeding on 16 November 1989 as
follows:

Personally, what Mr. Nakell said and did, did not bother
me. It bothered me as a lawyer and it bothered me as a judge.
It bothered me as an officer of the Court and the State presiding
over a courtroom in a highly volatile situation . . . . I'm not
concerned with the several times that I told Mr. Nakell to
sit down and be quiet before we had several long exchanges
. . . except . . . as it bears on what happened later . . . .
What bothers me and why I had Mr. Nakell removed was
with all that predicate, he then turned, in what I saw and
perceived to be a most disrespectful manner, to Mr. Thompson
after being directly ordered to sit down and be quiet and
not address the Court, but to communicate only through Mr.
Thompson, he refuses to do that, remains standing and in
a loud voice directs again his same inquiry to the Court but
by looking at Mr. Thompson and saying, 'Mr. Thompson will
you ask.' . . . It was at that point that I saw I had no alternative
but to remove Mr. Nakell. And the immediate effect of that,
the bailiffs coming up, following the outburst from the au-
dience, was the violent attack . . . by Eddie Hatcher against
the Court.

Nakell argues "the most salient indication of this [Judge Lake's] bias is his telling a newspaper reporter, before Mr. Nakell's hearing, that he had warned Mr. Nakell three times before having him removed, and that Mr. Nakell had been 'disruptive of the proceedings,' 'pandering to the audience and the defendant [Hatcher],' and encouraging Mr. Hatcher to be disruptive." Nakell asserts that he was convicted in the press before the hearing and the trial judge should have recused himself based on this prejudgment of the merits.

Our examination of the record reveals no bias, prejudice, or proof that would require the judge before whom the contempt was committed to recuse himself from conducting a hearing. The interview with the press occurred after the finding of contempt on 14 November 1989 and the ruling made by the trial judge at that proceeding was tantamount to a finding of contempt, and thus prejudgment could not have occurred. Thus, we hold Judge Lake did not err in denying Nakell's motion that he disqualify himself.

[2] Defendant Nakell's next argument, Assignment of Error No. 1, is set out in the record as follows:

1. Did the trial court on November 16, 1989, err in conducting an evidentiary hearing and imposing punitive measures against the defendant on account of alleged misconduct occurring on November 14, 1989, purportedly under its summary contempt authority established by G.S. § 5A-14, when such action was not necessary to restore order or maintain the dignity and authority of the court and when the measures imposed were not imposed substantially contemporaneous with the alleged contempt?

Nakell argues in his brief the hearing conducted on 16 November 1989 was not "in continuation" of the 14 November 1989 hearing and therefore the "measures" were not "imposed substantially contemporaneously with the contempt" as required by G.S. 5A-14.

N.C.R. App. P. 10(c)(1) provides in pertinent part:

A listing of the assignments of error upon which an appeal is predicated shall be stated at the conclusion of the record on appeal, in short form without argument, and shall be separately numbered. Each assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state

plainly, concisely and without argumentation the legal basis upon which error is assigned.

While Nakell's first assignment of error is in clear violation of the rule, and is subject to a dismissal, because of the serious nature of this case, we will respond to Nakell's contentions with respect to this assignment of error.

This Court addressed this question in *State v. Johnson*, 52 N.C. App. 592, 279 S.E.2d 77, *disc. review denied and appeal dismissed*, 303 N.C. 549, 281 S.E.2d 390 (1981). There, we held that the term "substantially contemporaneously" is construed in the light of its legislative purpose—that is to meet due process safeguards. We held that "[t]he word 'substantially' qualifies the word 'contemporaneously' and clearly does not require that the contempt proceedings immediately follow the misconduct." We further noted that factors bearing on the time lapse included the contemnor's notice or knowledge of the misconduct, the nature of the misconduct and other circumstances that may have some bearing on the right of the defendant to a fair and timely hearing.

In the present case, the conduct of Nakell which gave rise to his being held in direct criminal contempt occurred late in the afternoon of 14 November 1989. At Nakell's request, the court gave him "specification of the contempt" and set a hearing for Nakell to return "for a further consideration of this matter by the Court" on 16 November at 2:30 p.m. It is clear that the hearing on 16 November was in continuation and was "substantially contemporaneous" with the events of 14 November. Indeed, Judge Lake, at the hearing on 16 November, explained that the hearing was pursuant to G.S. 5A-14 and had been continued to 16 November "to afford Attorney Nakell adequate opportunity to respond to the direct criminal contempt charge." Clearly under the circumstances of the case, we find no conceivable error or prejudice to Nakell.

[3] By Assignment of Error No. 4, Nakell contends there is insufficient evidence to prove beyond a reasonable doubt that he violated a clear order, that he acted with willful intent to obstruct the proceedings, and that his conduct materially obstructed the proceedings as to constitute criminal contempt. This assignment of error is purportedly based on exceptions to Findings of Fact Nos. 4-14, Conclusions of Law Nos. 1-3, and the order entered.

We note at the outset that most of Nakell's argument in support of this assignment of error is based on the premise that Hatcher was Nakell's client. There is nothing in the record before us to support this assumption. In fact, the record demonstrates conclusively that Nakell did not represent Hatcher, that Nakell did not have a client, and that Nakell was an interloper at the time he entered the courtroom on 14 November and seated himself beside Hatcher. Indeed, Judge Lake found as a fact that the court made it abundantly clear to Nakell that Angus Thompson was the only attorney of record for Hatcher, that Nakell was not recognized by the court as having standing in the court, and that the court was not accepting his limited appearance. This finding of fact, although excepted to by Nakell, is not challenged in his brief. As stated before, Nakell merely assumes that he had a client. Thus, all of defendant's arguments relating to the court's refusal to hear Nakell are meritless.

[4]   The balance of Nakell's argument in his brief in support of Assignment of Error No. 4 raises the question of whether the findings of fact and evidence support the conclusions of law and the order entered.

G.S. 5A-11(a) provides instances of criminal contempt. These include:

(1) Willful behavior committed during the sitting of a court and directly tending to interrupt its proceedings.

(2) Willful behavior committed during the sitting of a court in its immediate view and presence and directly tending to impair the respect due its authority.

(3) Willful disobedience of, resistance to, or interference with a court's lawful process, order, directive, or instruction or its execution.

Criminal contempts are crimes, and therefore the accused is entitled to the benefits of all constitutional safeguards. *O'Briant v. O'Briant*, 313 N.C. 432, 329 S.E.2d 370 (1985). Evidence is sufficient to support a conviction if there is substantial evidence of every element of the crime. *State v. Jordan*, 321 N.C. 714, 365 S.E.2d 617 (1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Erwin*, 304 N.C. 93, 98, 282 S.E.2d 439, 443 (1981). Conduct which is designed and reasonably calculated to interrupt the pro-

**IN RE NAKELL**

[104 N.C. App. 638 (1991)]

ceedings of the court then engaged in the administration of justice and the dispatch of business presently before it is punishable as criminal contempt. *State v. Little*, 175 N.C. 743, 94 S.E. 680 (1917).

Nakell argues the record, the findings of fact, and the evidence fail to support the three conclusions of law drawn from the findings of fact made by Judge Lake. He contends that there is no support for the conclusion that he willfully intended that his conduct should be disruptive, or that the proceeding was disrupted in any way, nor that his conduct impaired the respect due the authority of the court, nor that he willfully and intentionally disobeyed, resisted and interfered with a lawful direction and order of the court.

The record before us manifests that Nakell intended to disrupt the proceeding wherein he, as an interloper, continually interrupted the proceeding by attempting to argue matters not then being considered. The trial judge repeatedly ordered Nakell to sit down and be quiet. Nevertheless, Nakell willfully disobeyed the order and continued to interfere and disrupt the proceeding. Nakell not only intended that his conduct should disrupt the proceeding, it did in fact do so. His language, conduct, and attitude precipitated the violent outburst from Hatcher and applause from Hatcher's supporters in the courtroom. Hatcher's outbursts halted the proceeding and he had to be removed from the courtroom, bound and gagged. We cannot imagine a scenario more calculated to disrupt the proceeding and to impair the respect due the authority of the court.

We find no error in the proceeding and affirm the order dated 17 November 1989 adjudging Barry Nakell to be in direct criminal contempt and ordering him to pay a fine of $500 and be imprisoned for ten days in the custody of the Sheriff of Robeson County.

Affirmed.

Judges ARNOLD and PHILLIPS concur.

Judge Phillips concurred in this decision prior to his retirement on 1 October 1991.