COUNTY OF JOHNSTON, Plaintiff v. CITY OF WILSON, Defendant

No. COA98-1017

(Filed 7 March 2000)

**1. Judges— recusal—no evidence or personal bias, prejudice, or interest**

The trial court did not err in denying defendant's motion for the presiding judge's recusal, based solely on the fact that the plaintiff is Johnston County and the judge is the Resident Superior Court Judge of that county, because the record reveals no evidence of personal bias, prejudice, or interest on the part of the presiding judge.

**2. Eminent Domain— subject matter jurisdiction— condemnation**

The trial court did not err in failing to dismiss a county's challenge of a city's condemnation proceeding based on lack of subject matter jurisdiction because: (1) the county's board of commissioners granted the county the substantive right to protect its citizens from unlawful takings by contiguous local governments, N.C.G.S. § 153A-15; (2) the county was potentially aggrieved by the affect on its ad valorem tax base; and (3) N.C.G.S. § 153A-15 provides that a condemnor must have the approval of the county board of commissioners of the county where the land to be condemned is located before final judgment may be entered in any action of condemnation.

**3. Jurisdiction— final judgment—condemnation**

The trial court lacked jurisdiction to review two consent judgments previously entered in condemnation proceedings because: (1) a final judgment fully determines the action, and a court has no jurisdiction at a subsequent term to proceed further on issues already determined; and (2) there were no pending motions to set aside the two consent judgments by either of the landowners or the city.

**4. Injunction— permanent—trial pending—error**

Even though the county may ultimately prevail and receive the relief requested after full consideration on the merits, the trial court erred in granting the county a permanent injunction instead of a preliminary injunction to restrain the city from exercising its power of eminent domain because the permanent injunction actu-

ally determined the final rights of the parties before a final trial of the action.

Appeal by defendant from orders and judgment entered 18 May 1998 by Judge Knox V. Jenkins, Jr. in Superior Court, Johnston County. Heard in the Court of Appeals 28 April 1999.

*J. Mark Payne for plaintiff-appellee.*

*Rose, Rand, Orcutt, Cauley, Blake & Ellis, P.A., by James P. Cauley, III, and Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by V. Randall Tinsley, for defendant-appellant.*

*James B. Blackburn, III and Paul A. Meyer for the North Carolina Association of County Attorneys, amicus curiae.*

*Andrew L. Romanet, Jr. and John M. Phelps, II for the North Carolina League of Municipalities, amicus curiae.*

TIMMONS-GOODSON, Judge.

This complex appeal arises from condemnation proceedings initiated by the City of Wilson ("City") for land located in Johnston County. On 29 October 1997, Johnston County ("County") filed a complaint in the Superior Court, Johnston County, seeking a preliminary injunction restraining the City from proceeding with condemnations and a writ of mandamus requiring that the actions already filed be dismissed. The City timely answered on 29 December 1997 and moved to dismiss the County's complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. On 4 May 1998, the date of the hearing, the City filed an additional motion requesting that the presiding judge recuse himself from the proceedings. Judge Knox V. Jenkins, Jr. denied the City's motion for recusal, denied the City's Rule 12(b)(6) motion and granted the County a permanent injunction and writ of mandamus. The City filed its notice of appeal on 18 May 1998.

The pertinent facts underlying this appeal are as follows: Over twelve years ago, in an effort to solve its ongoing public water supply shortage, the City began the necessary proceedings to add twelve feet of water to the Buckhorn Reservoir on Contentnea Creek in Wilson County by replacing the existing dam with a larger one. On 21 February 1997, the City received a federal permit from the United States Army Corps of Engineers. The permit imposed various Clean Water Act and Endangered Species Act requirements on the City

including the acquisition and preservation of land. A portion of the affected area is located in the County.

Anticipating this requirement, the City approached the County Board of Commissioners ("Board") in 1991 and expressed its desire to proceed with condemnation of approximately 400 acres of land surrounding the Buckhorn Reservoir. On 22 April 1991, the Board notified the City that it did not support the proposal. At a subsequent hearing, the Board informed the City of its concerns that the property owners be justly compensated for the taking of their land and that the County be justly compensated for the loss of the affected properties from its *ad valorem* tax base. Following this hearing, the County consented to the City's proposal, contingent upon reasonable compensation to the County in lieu of taxes and earnest efforts by the City to negotiate fair settlements with the affected landowners. The County maintains it never authorized condemnation of the property by the City.

However, on 20 October 1997, the City initiated condemnation proceedings against thirty-four County landowners. In two of these proceedings, the property was conveyed to the City pursuant to court-approved consent judgments. The City asserted that its condemnation authority arose from its charter which reads, in pertinent part, as follows:

> The City of Wilson shall possess the power of eminent domain and may acquire . . . any real estate . . . either within or without the city limits, for any lawful public use or purpose. In the exercise of the power of eminent domain, the city is hereby vested with all power and authority now or hereafter granted by the laws of North Carolina applicable to the City of Wilson, and the city shall follow the procedures now or hereafter prescribed by said laws[.] . . . The powers herein granted to the City of Wilson for the purpose of acquiring property by eminent domain shall be in addition to and supplementary to those powers granted in any other local act or in any other General Statute[.]

1989 N.C. Sess. Laws ch. 348, § 17.7.

Nine days later, the County, relying on section 153A-15 of the North Carolina General Statutes, filed suit seeking injunctive relief. The statute provides, in pertinent part:

> (a) Notwithstanding the provisions of Chapter 40A of the General Statutes or any other general law or local act conferring

the power of eminent domain, before final judgment may be entered in any action of condemnation initiated by a county, city or town, special district, or other unit of local government which is located wholly or primarily outside another county, whereby the condemnor seeks to acquire property located in the other county, the condemnor shall furnish proof that the county board of commissioners of the county where the land is located has consented to the taking.

N.C. Gen. Stat. § 153A-15 (Cum. Supp. 1998).

I. City's Motion for Recusal

[1] First, we address the City's contention that the trial court erred in denying its motion for the presiding judge's recusal. On 4 May 1998, the day of the hearing of this matter, the City filed a motion for Judge Jenkins' recusal based solely on the fact that the plaintiff is Johnston County and Judge Jenkins is the Resident Superior Court Judge of said county and is duly elected by the citizens thereof. The City's argument is without merit.

Canon 3(C)(1) of the Code of Judicial Conduct directs that "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned[.]" *See also* N.C. Gen. Stat. § 15A-1223 (1999). The burden is on the party moving for recusal "to demonstrate objectively that grounds for disqualification actually exist." *In re Nakell*, 104 N.C. App. 638, 647, 411 S.E.2d 159, 164 (1991), *appeal dismissed and disc. review denied and stay dissolved*, 330 N.C. 851, 413 S.E.2d 556 (1992) (citation omitted). The moving party, supported by affidavits, may meet his burden by presenting "substantial evidence that there exists such a personal bias, prejudice or interest on the part of the judge that he would be unable to rule impartially." *Id.* at 647, 411 S.E.2d at 164.

The City presented no affidavits supporting its motion. The record reveals no evidence of personal bias, prejudice or interest on the part of Judge Jenkins. We are not inclined to set a standard that resident superior court judges cannot participate in proceedings in which the county where the judge resides, and not the judge himself, has a potential interest in the proceedings. This assignment of error is overruled.

II. City's 12(b)(6) Motion to Dismiss

[2] We next address the City's argument that the trial court erred in failing to dismiss the action because it lacked subject matter jur-

isdiction. The City asserts that the trial court should have granted its motion to dismiss because: (1) the County lacked jurisdiction to file the action; (2) the trial court lacked jurisdiction to hear the action purporting to challenge pending condemnation proceedings; and (3) the trial court lacked appellate jurisdiction to review prior Superior Court judgments. We find these arguments to be without merit.

In its first contention, the City asserts that the County was not the real party in interest and, therefore, had no standing to bring this action. We disagree.

It is well settled that an appeal may only be taken by an aggrieved real party in interest. *Insurance Co. v. Ingram, Comr. of Insurance*, 288 N.C. 381, 218 S.E.2d 364 (1975). A " 'person aggrieved' " is one " 'adversely affected in respect of legal rights, or suffering from an infringement or denial of legal rights.' " *State ex rel. Utilities Comm. v. Carolina Utility Cust. Assn.*, 104 N.C. App. 216, 218, 408 S.E.2d 876, 877 (1991) (quoting *In re Wheeler*, 85 N.C. App. 150, 153, 354 S.E.2d 374, 376 (1987) (citation omitted)), *disc. review denied*, 330 N.C. 618, 412 S.E.2d 95 (1992). In the case *sub judice*, the County, through its Board of Commissioners, was statutorily granted the substantive right to protect its citizens from unlawful takings by contiguous local governments. *See* N.C.G.S. § 153A-15. Furthermore, the County itself was potentially aggrieved by the affect on its *ad valorem* tax base. *See Orange County v. Dept. of Transportation*, 46 N.C. App. 350, 265 S.E.2d 890, *disc. review denied*, 301 N.C. 94 (1980). As such, the County had standing to proceed as an aggrieved real party in interest.

The City also contends the trial court lacked subject matter jurisdiction since the City's charter does not authorize a separate action to review the condemnation actions. However, section 153A-15 of the General Statutes clearly provides that the condemnor (here, the City) must have the approval of the county board of commissioners of the county where the land to be condemned is located *before* final judgment may be entered in any action of condemnation initiated. Therefore, the City's alleged failure to obtain such approval from the County's Board of Commissioners establishes the right of the County to seek review under the statute.

The City further argues that the trial court erred in reviewing the Superior Court consent judgments which had been entered in two of

the thirty-four condemnation proceedings. Since the County had standing to bring the action on its own accord, full dismissal was inappropriate.

[3] However, we agree with the City's contention that the trial court lacked jurisdiction to review the two consent judgments previously entered. Since a final judgment fully determines the action, the court has no jurisdiction at a subsequent term to proceed further on the issues already determined. *Pruett v. Pruett*, 247 N.C. 13, 100 S.E.2d 296 (1957). This is true especially when, as here, there were no pending motions to set aside the two consent judgments by either of the landowners or the City.

III. Permanent Injunction

[4] Lastly, we address the City's contention that the trial court erred in permanently enjoining the City from exercising its power of eminent domain. In its complaint, the County moved for a preliminary injunction restraining the City from proceeding with condemnations in violation of state law. At the hearing, the trial court determined that the County was "entitled to a permanent injunction, prohibiting the City of Wilson from proceeding in Johnston County, without the prior consent of the Commissioners of Johnston County, pursuant to [the applicable statute]."

"The term, 'preliminary injunction' refers to an interlocutory injunction issued after notice and hearing which restrains a party pending trial on the merits." *Pruitt v. Williams*, 288 N.C. 368, 371, 218 S.E.2d 348, 350 (1975). "The issuing court, after weighing the equities, and the advantages and disadvantages to the parties, determines in its sound discretion whether an interlocutory injunction should be granted or refused." *Id.* at 372, 218 S.E.2d at 351. "The court cannot go further and determine the final rights of the parties, which must be reserved for the final trial of the action." *Id.*

In the present case, the trial court improperly granted the County the extreme remedy of a permanent injunction. While the County may ultimately prevail and receive the relief requested after full consideration of the merits, it was error to grant permanent injunctive relief based solely on the pleadings, motions and arguments of counsel. "The judgment entered in this cause was a final judgment, entered in equity, and should have been granted only by the judge at the final trial of the action." *Smith v. Rockingham*, 268 N.C. 697, 699, 151

S.E.2d 568, 569 (1966) (emphasis omitted). The trial court erred by issuing a permanent injunction which actually determined the final rights of the parties, rather than a preliminary injunction.

We decline to address the City's remaining assignments of error, because of the likelihood they will not recur during the final stages of this proceeding.

For the foregoing reasons, we affirm the trial court's denial of the motion to recuse and the majority of the 12(b)(6) motion to dismiss; we vacate the trial court's review of the previously entered consent judgments for lack of subject matter jurisdiction and the trial court's granting of final judgment on the pleadings. We remand for further proceedings on the motions for permanent injunction not inconsistent with this opinion.

Affirmed in part; reversed in part and remanded.

Judges LEWIS and HORTON concur.