CITY OF ASHEVILLE, Petitioner,
v.
WILLIAM HUSKEY, Respondent.
No. COA09-1237.
Court of Appeals of North Carolina.
Filed May 18, 2010.
City of Asheville, by Assistant City Attorneys Curtis W. Euler and Kelly L. Whitlock, for Petitioner-Appellant.
The John C. Hunter Law Firm, PLLC, by John C. Hunter and Robert C. Carpenter, for Respondent-Appellee.

UNPUBLISHED OPINION
BEASLEY, Judge.
The City of Asheville (Petitioner or City) appeals the trial court's order dismissing its Petition for Trial (Petition) upon motion by William Huskey (Respondent). We reverse.
On 2 September 2008, Petitioner terminated Respondent from his employment with the City. Pursuant to Petitioner's personnel code, Respondent appealed his termination before the five-member Civil Service Board (Board). The North Carolina General Assembly created the Board in its enactment of the Asheville Civil Service Act (Civil Service Act or Act) to perform various specified duties "with respect to the classified service of the City." 1999 N.C. Sess. Laws ch. 303, § 1. Specifically, the Civil Service Act, as amended, provides:
Whenever any member of the classified service of the City is discharged, suspended, reduced in rank, transferred against his or her will, or is denied any promotion or raise in pay which he or she would be entitled to, that member shall be entitled to a hearing before the Civil Service Board to determine whether or not the action complained of is justified.
Id. at § 8(a).
Pre-hearing matters were addressed in November 2008, at which time Respondent learned that the City Attorney's office had issued subpoenas to compel the attendance of certain witnesses at the hearing. Respondent believed that the grievance provisions of the Civil Service Act do not confer the subpoena power upon the Board, the City, or the employee. The Board's attorney, William F. Slawter, reviewed the Act for clarification of the subpoena issue and opined to counsel for both parties and the Board that the Board lacks authority to cause the issuance of subpoenas in connection with the grievance process outlined by § 8 of the Civil Service Act. It also appeared to Slawter that the Board was therefore powerless to challenge the subpoenas at issue or render them invalid.
On 18 March 2009, the grievance hearing was conducted before the Board for a determination as to whether Respondent's termination was justified. At that time, Respondent learned that Petitioner had not withdrawn the previously issued subpoenas. Slawter clarified his opinion as to the Board's lack of authority to either issue or quash subpoenas in the context of a grievance hearing under § 8 of the Civil Service Act. He acknowledged that the Act did not provide a manner by which witnesses could be compelled to or prohibited from testifying and suggested, as one possible avenue, that the parties might bring an action in superior court for the issuance or quashing of subpoenas. Accordingly, Slawter suggested that it would not seem to be within the Board's jurisdiction to tell witnesses they could not testify because the other party objects to the manner by which their appearance was requested. Therefore, the Board determined that it would allow the witnesses to testify but, for the record, have them state the manner by which they were selected to appear at the hearing in order to preserve the issue for appeal.
The hearing was continued to 25 March 2009, and the Board held that Petitioner was not justified in terminating Respondent and reversed the City's action. Board member Sidney Bach gave an oral ruling and read the Board's findings into the record at approximately 11:45 p.m. on 25 March 2009. The two attorneys for Petitioner and Lisa Roth, the human resources director for the City and the Board's secretary, were all present when the Board announced its determination. The chairman of the Board asked Slawter to explain the remainder of the decision-making process. Slawter responded that "[t]he decision as Mr. Bach read into the record will become the decision of the Board." He confirmed that the Board had five (5) days within which to reduce the oral ruling to writing, that he would prepare the written decision for the chairman's signature, and that he would remit it to the human resources office for distribution to the parties in five days.
The Board's decision was reduced to writing and signed by the chairman on 27 March 2009. On 30 March 2009, the Board's written decision was hand-delivered to Roth along with a cover letter from Slawter instructing her to serve and file the enclosed order. Roth acknowledged her receipt thereof on 30 March 2009 and hand-delivered the decision to the city clerk's office, and the city clerk filed the decision that day. The city clerk swore in her affidavit that 30 March 2009 was the first time she had written notice of the Board's decision in this matter. Roth also served a copy of the written decision on John Hunter, attorney for Respondent, and Curtis Euler, attorney for Petitioner, on 30 March 2009. Both attorneys acknowledged their receipt on 30 March 2009 by signing a copy thereof. The written decision, stating that the Board reached its determination on 25 March 2009, is a nearly verbatim rendering of the ruling read on the record that evening.
On 7 April 2007, the City filed a Petition for Trial pursuant to § 8(f) of the Civil Service Act, which allows either party to appeal the Board's decision to the Bumcombe County Superior Court for a trial de novo within ten (10) days of receiving notice of the Board's decision. Respondent filed a Motion to Dismiss the City's Petition on 27 April 2009 pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure on the grounds that: (1) the City did not timely file its appeal; and (2) the appeal is inconsistent with the City's earlier position such that it has waived § 8(f) and is estopped from challenging the Board's decision. On 1 July 2009, the trial court granted Respondent's motion on the grounds that Petitioner filed its appeal more than ten days from 27 March 2009, the date the decision was reduced to writing, and dismissed its Petition. Petitioner appeals.
Petitioner argues that the trial court erred as a matter of law in finding the Petition for Trial untimely filed and thereby dismissing it as such. Although the trial court did not reach Respondent's alternative arguments for dismissal, Respondent cross-assigns as error the failure of the trial court to dismiss the Petition on the grounds that: (1) Petitioner has waived and is estopped from appealing the Board's decision; and (2) Petitioner is not an aggrieved party with standing to appeal.

I. Subject Matter Jurisdiction

Petitioner argues that the trial court erred in granting Respondent's Motion to Dismiss by determining that the Petition for Trial was untimely filed under the Act. An appeal of a superior court's order granting a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is subject to de novo review. See Harper v. City of Asheville, 160 N.C. App. 209, 213, 585 S.E.2d 240, 243 (2003). A court determining the existence of jurisdiction over the subject matter "may consider matters outside the pleadings." Harris v. Matthews, 361 N.C. 265, 271, 643 S.E.2d 566, 570 (2007).
Petitioner contends that its appeal to superior court was timely because it filed the Petition in compliance with § 8 of the Civil Service Act. Section 8 provides, in pertinent part:
(e) The Civil Service Board shall render its decision in writing within five days after the conclusion of the hearing. . . . Upon reaching its decision, the Board shall, in writing, immediately inform the city clerk and the member requesting the hearing of the Board's decision.
(f) Within ten days of the receipt of notice of the decision of the Board, either party may appeal to the Superior Court Division of the General Court of Justice for Buncombe County for a trial de novo. The appeal shall be effected by filing with the Clerk of the Superior Court of Buncombe County a petition for trial in superior court, setting out the facts upon which the petitioner relies for relief.
1999 N.C. Sess. Laws ch. 303, § 8(e)-(f). Petitioner reads the express language to indicate that the ten-day period begins to run against each party respectively upon receipt of the written notice of the Board's decision by the city clerk and the member who requested the hearing. We agree.
The issue before us involves interpretation of § 8(f) of the City's Civil Service Act, and in particular, the phrase therein providing that "[w]ithin ten days of the receipt of notice of the decision of the Board, either party may appeal." It is well-settled that "[i]n matters of statutory construction, our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished." Electric Supply Co. v. Swain Electrical Co., 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991).
The foremost task in statutory interpretation is to determine legislative intent while giving the language of the statute its natural and ordinary meaning unless the context requires otherwise. Where the statutory language is clear and unambiguous, the Court does not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language.
Carolina Power & Light Co. v. City of Asheville, 358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004) (internal quotation marks and citations omitted). For, "if the language of a statute is clear and unambiguous when applying ordinary meaning and grammar to its text, the legislative intent behind it is readily apparent." Durham Land Owners Ass'n v. County of Durham, 177 N.C. App. 629, 633, 630 S.E.2d 200, 203 (2006). "[H]owever, where the statute is ambiguous or unclear as to its meaning, the courts must interpret the statute to give effect to the legislative intent." Frye Reg'l Med. Ctr. v. Hunt, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999).
When the plain language of a statute proves unrevealing, a court may look to other indicia of legislative will, including: the purposes appearing from the statute taken as a whole, the phraseology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes in pari materia, the preamble, the title, and other like means.
In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co., 161 N.C. App. 558, 560, 589 S.E.2d 179, 181 (2003) (internal quotation marks and citations omitted).
Most relevant to this case, "[s]tatutory provisions must be read in context: `Parts of the same statute dealing with the same subject matter must be considered and interpreted as a whole.'" Id. (quoting Comr. of Insurance v. Automobile Rate Office, 294 N.C. 60, 66, 241 S.E.2d 324, 328 (1978)). "Words and phrases of a statute are to be construed as a part of the composite whole and accorded only that meaning which other modifying provisions and the clear intent and purpose of the statute permits." In re Hayes, 199 N.C. App. ___, ___, 681 S.E.2d 395, 401 (2009) (citing Underwood v. Howland, Comr. of Motor Vehicles, 274 N.C. 473, 479, 164 S.E.2d 2, 7 (1968)), disc. review denied, 363 N.C. 803, 690 S.E.2d 694-95 (2010); see also McLeod v. Commissioners, 148 N.C. 77, 85, 61 S.E. 605, 607 (1908) ("The statute must be construed as a whole, and not by the wording of any particular section or part of it."). Consideration of the statute as a whole comports with the fundamental principle that "a statute must be construed, if possible, so as to give effect to every part of it, it being presumed that the Legislature did not intend any of its provisions to be surplusage." Hayes, 199 N.C. App. at ___, 681 S.E.2d at 401 (internal quotation marks and citation omitted).
Beginning with the plain language, the words of the statute at issue indicate that either party may appeal "[w]ithin ten days of the receipt of notice of the decision of the Board." 1999 N.C. Sess. Laws ch. 303, § 8(f). Respondent argues that although "notice" is not defined in the Civil Service Act, "its usage [therein] is plain and free from ambiguity, and expresses a single, definite, and sensible meaning." He contends that the clear language of the Act requires only actual notice and that such was satisfied when the decision of the Board was openly announced and read into the record on 25 March 2009. Petitioner, however, urges this Court to determine that the ten day period allotted for the filing of any appeal begins to run upon each party's respective receipt of the Board's written decision. Under the latter interpretation, the filing period for the City's appeal would have begun running on 30 March 2009, when the city clerk first received written notice of the Board's decision.[1] We agree with Petitioner.
Black's Law Dictionary defines "notice" as "[l]egal notification required by law or agreement, or imparted by operation of law as a result of some fact" and indicates that a party may have notice if that it "(1) has actual knowledge of [a fact or condition]; (2) has received a notice of it; (3) has reason to know about it; (4) knows about a related fact; or (5) is considered as having been able to ascertain it by checking an official filing or recording." Black's Law Dictionary 1087 (7th ed. 1999); see also Perkins v. Arkansas Trucking Servs., Inc., 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000) ("In the absence of a contextual definition, courts may look to dictionaries to determine the ordinary meaning of words within a statute."). Because there are multiple ways by which a person can have "notice," as the dictionary suggests, a lack of detail describing the type of notice required may render the term ambiguous. Here, the plain language of § 8(f) that the ten-day period for filing an appeal begins to run upon "the receipt of notice" is ambiguous because the statutory text leaves unclear the particular form of notice demanded. Cf. Copeland v. Brennan, 414 F. Supp. 644, 646 (D.D.C. 1975) ("[T]he statutory language that the thirty-day period begins to run upon `receipt of notice' is ambiguous as to the precise attributes of `notice.'"). This ambiguity, however, is clarified upon a contextual reading of subsection (f) with § 8 of the Civil Service Act as a whole.
Respondent claims that § 8(f) of the Act remains unaffected by the provisions in § 8(e), which require the Board's decision to be reduced to writing within five days of the hearing and that the written decision be forwarded to the city clerk and the employee. To adopt Respondent's reasoning, however, would ignore the fundamental principle of statutory construction that requires us to consider the phrase at issue as a composite part of the section as a whole. Respondent analogizes the actual notice standard he advocates to the standard previously used by our courts, where judgments were deemed entered upon their announcement in open court. See, e.g., In re Moore, 306 N.C. 394, 400, 293 S.E.2d 127, 130-31 (1982); Brooks, Com'r of Labor v. Gooden, 69 N.C. App. 701, 706, 318 S.E.2d 348, 352 (1984). While Rule 58 of the North Carolina Rules of Civil Procedure has been amended to clarify when any judgment is deemed entered, Respondent points out that cases could be dismissed under the earlier Rule when a party failed to file an appeal within the time allotted once a decision was announced in open court. See, e.g., Moore, 306 N.C. at 400, 293 S.E.2d at 130-31. The previous Rule itself, however, fully addressed both scenarios  for judgments rendered in open court versus those that were not  and therefore is not comparable to the statute at issue, which does not specifically address both contexts. Compare N.C. Gen. Stat. § 1A-1, Rule 58 (1990) (detailing what constitutes an entry of judgment, upon which the time period for filing an appeal is based, in different situations), with 1999 N.C. Sess. Laws ch. 303, § 8 (making no distinction in the time allowed for appeal when a decision of the Board is read aloud at the hearing before its reduction to writing). Accordingly, we conclude Respondent's attempt to liken the instant case to one dismissable under an earlier codification of Rule 58 has no merit.
Rather, our construction of § 8(f) of the Civil Service Act reveals that the legislature intended for the ten-day appeal period to be triggered by the receipt of written notice of the Board's decision, regardless of whether a party has actual or constructive knowledge thereof before that time. Although § 8(f) does not specify the form of notice required, the structure of the statutory section is instructive. Where § 8(f) establishes that "the receipt of notice" of the Board's decision begins the appeal period and § 8(e) fully details the requirements of that decision, subsection (f) must be read in reference to the paragraph which immediately precedes it. The only logical conclusion when reading the whole statute contextually is that "the receipt of notice of the decision of the Board" occurs when the mandates of § 8(e) are met. Accordingly, the specifications of § 8(e) that the Board's decision must be rendered in writing and that the persons listed must be informed in writing of the Board's decision are embedded in "the receipt of notice of the decision," as used in § 8(f). There is no indication in the Act that these requirements are waived if either party has prior actual knowledge of the decision.
Moreover, to accept Respondent's position that the calculation of time began from the date the Board rendered its oral decision would clearly frustrate the purpose of § 8(e) requiring the decision to be in writing and granting each party the right to be informed of the Board's decision in writing. Finally, based on the order of sections in the Act and the juxtaposition of subsections (e) and (f) specifically, we conclude the legislature intended for the Board to inform the parties of its written decision prior to either party filing a petition in superior court for de novo review. Indeed, the Board's own counsel wrote in his cover letter enclosing the Board's written decision that "[t]he date of delivery of the Order on the attorneys is important with regard to when the time to file an appeal begins to run." Because this construction harmonizes the provisions of §§ 8(e)-(f) and gives effect to each requirement therein, we hold that "the receipt of notice of the decision" occurs when the city clerk and member requesting the hearing  the individuals designated in subsection (e)  are informed in writing of the Board's decision.
Here, the Board's oral decision of 25 March 2009 was put into writing on 27 March 2009, but the record shows that the city clerk and Respondent, through his attorney, first received written notice of the decision on 30 March 2009. The City filed its Petition for Trial in Buncombe County Superior Court within the ten-day period following 30 March, and the initiation of the time period was not affected by the fact that the Board had rendered an oral decision at the close of the hearing. Because the Board was not compliant with the Act until its decision was put into writing and the parties were given written notice of the decision, Petitioner's filing on 7 April 2009 was timely. Therefore, we hold that the trial court erred in finding the calculation of time for filing an appeal in superior court began on 27 March 2009 and reverse the order dismissing the Petition for lack of subject matter jurisdiction.

II. Estoppel

Pursuant to Appellate Rule 10(d) of the version of the rules governing this appeal, Respondent cross-assigns as error the failure of the trial court to dismiss the City's Petition on equitable and judicial estoppel grounds because its appeal is inconsistent with the previous position taken by Petitioner before the Board. Respondent suggests that the trial court should have dismissed the Petition under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure because Petitioner's previous position indicates that the decision of the Board represents the final and full determination of the City in this matter. We disagree.
We review Rule 12(b)(6) motions to dismiss de novo. Leary v. N.C. Forest Prods., Inc., 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, aff'd per curiam, 357 N.C. 567, 597 S.E.2d 673 (2003). Pursuant to Rule 12(b)(6), the standard of review for a motion to dismiss is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." Harris v. NCNB, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987); see also Burgin v. Owen, 181 N.C. App. 511, 512, 640 S.E.2d 427, 428 (2007) ("The standard of review of an order granting a 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true."). "The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." Whiteheart v. Waller, 199 N.C. App. ___, ___, 681 S.E.2d 419, 421 (2009), disc. review denied, 363 N.C. 813, __ S.E.2d __ (2010). Our courts have elaborated:
Dismissal under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.
Wood v. Guilford Cty., 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002).
Respondent premises this cross-assignment of error on the disagreement between the parties and the Board over the propriety of issuing subpoenas in connection with a hearing under § 8 of the Act. At the hearing, Petitioner indicated that it relied on § 7 of the Civil Service Act for the conferral of the subpoena power. See 1999 N.C. Sess. Laws ch. 303, § 7. Pursuant to § 7,
[t]he Council, the City Manager, the chair of the Civil Service Board, or any person designated by any of them, may make investigations concerning the facts in respect to the operation and enforcement of the provisions of this Act and of the rules established thereunder, and concerning the condition of the civil service of the City or any branch thereof and may refer such matters to the Civil Service Board for hearing in accordance with Section 8 of this Act, or for further investigation as appropriate.
Id. Moreover, "[a]ny person, or persons, making any investigation authorized or required by this section, shall have the power to subpoena and require the attendance of witnesses." Id.
Counsel for Petitioner defended his decision to issue subpoenas, despite Slawter's opinion that such authority is lacking, by claiming that § 7 bestows upon the city manager the ability to issue subpoenas or delegate someone, such as the City Attorney's office, to do so. Accordingly, Petitioner subpoenaed several witnesses for attendance at the hearing under the authority of the city manager, as his designee. When asked by the Board what it was in § 7 that Petitioner relied upon for the city manager's authority to issue subpoenas in the hearing context, Petitioner responded that this matter was "an investigation regarding the conduct of Mr. William Huskey." In response to the Board's question as to whether it was Petitioner's position that an investigation, and not a grievance hearing, was being conducted, counsel for the City replied, "I think it is both."
Petitioner explained that § 7 allows for any person making an investigation thereunder to have the subpoena power and require witness attendance. He proposed that the city manager had made an investigation into the conduct of Respondent and that the Board was reviewing the city manager's decision at the hearing. He said, "I think it's all one and the same." Petitioner argued that § 7 "dovetails" into § 8, thus equating the city manager's process of reviewing the disciplinary action with the grievance hearing held independently under the procedures set out in the Act. Therefore, according to the City's view, §§ 7 and 8 of the Act are "one and the same," and an investigation is also a grievance hearing.
Respondent argues that because the City claimed that the investigation and the hearing were one and the same, the outcome of the Board hearing and the City's investigation are also one and the same. He proposes that where the Board found that Petitioner lacked justification for firing Respondent, Petitioner must also find the termination unjustifiable. Therefore, Respondent contends that Petitioner's seeking trial de novo implicitly asserts that the hearing and investigation are not one and the same and, thus, constitutes a position different than that previously advocated. We first note that none of Respondent's bases for applying the estoppel doctrine appear on the face of the Petition, and the trial court was thus correct in declining to address dismissal under 12(b)(6). However, even if the court had treated Respondent's motion as one for summary judgment and considered matters beyond the Petition, Respondent's arguments are unpersuasive.
Common to both equitable and judicial estoppel is the requirement that the party asserting either defense must demonstrate that certain actions of the opposing party created an unfair prejudice or detriment. See, e.g., Gore v. Myrtle/Mueller, 362 N.C. 27, 33-34, 653 S.E.2d 400, 405 (2007) (equitable estoppel); Whitacre P'ship v. Biosignia, Inc., 358 N.C. 1, 27-29, 591 S.E.2d 870, 887-89 (2004) (judicial estoppel). Respondent fails entirely to show that he has suffered any sort of prejudice or detriment incurred by the City's filing of the Petition after presenting its theory supporting the subpoenas. We therefore dismiss this argument and hold that it would not have been proper for the trial court to dismiss the Petition on the basis of either equitable or judicial estoppel.

III. Standing

Respondent also cross-assigns as error the failure of the trial court to dismiss the City's Petition on the grounds that Petitioner was not an aggrieved party with standing to appeal. This argument is meritless.
"Standing concerns the trial court's subject matter jurisdiction and is therefore properly challenged by a Rule 12(b)(1) motion to dismiss." Fuller v. Easley, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001). Thus, a motion to dismiss for want of standing is reviewed de novo. See Mangum v. Raleigh Bd. of Adjust., 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008). "N.C. Gen. Stat. § 1-271 (2007) provides that `[a]ny party aggrieved' is entitled to appeal in a civil action." Moody v. Sears Roebuck & Co., 191 N.C. App. 256, 262-63, 664 S.E.2d 569, 574 (2008). "A person aggrieved is one adversely affected in respect of legal rights, or suffering from an infringement or denial of legal rights." County of Johnston v. City of Wilson, 136 N.C. App. 775, 779, 525 S.E.2d 826, 829 (2000) (internal quotation marks and citations omitted).
Respondent argues that Petitioner is not an aggrieved party because it implicitly adopted the Board's decision regarding Respondent's termination. Respondent suggests that, under Petitioner's theory that the hearing and investigation were one and the same, "the Board's decision is the City's decision" and consequently, Petitioner lacks standing to appeal. We disagree.
Pursuant to § 8(f) of the Act, "either party may appeal to the Superior Court Division of the General Court of Justice for Buncombe County for a trial de novo." 1999 N.C. Sess. Laws ch. 303, § 8(f). A plain reading of the statute indicates that our legislature has granted each party to a hearing under § 8 of the Act an unconditional right thereunder to appeal a decision by the Board. Because Petitioner was a party to the hearing, § 8(f) bestows upon it standing to appeal the adverse ruling it suffered by the Board's decision under the Act. Therefore, Petitioner has standing to bring its appeal in Buncombe County Superior Court by filing a petition for trial de novo, as it has done.
Moreover, any arguments of counsel before or during the hearing should not affect either party's standing because § 8(f) clearly provides for de novo review. This Court has held:
Power to try a case de novo vests a court with full power to determine the issues and rights of all parties involved, and to try the case as if the suit had been filed originally in that court. . . . This means that the court must hear or try the case on its merits from beginning to end as if no trial or hearing had been held by the Board and without any presumption in favor of the Board's decision.
Warren v. City of Asheville, 74 N.C. App. 402, 405-06, 328 S.E.2d 859, 862 (1985) (internal quotation marks and citation omitted). Accordingly, the arguments made by Petitioner before the Board in support of its subpoena power are not an issue because the superior court must treat the case as if it were originally filed there. This cross-assignment of error is dismissed.
We reverse the trial court's dismissal of the City's Petition. We dismiss Respondent's cross-assignments of appeal.
Reversed and Remanded.
Judges MCGEE and STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] We note that neither party argues in favor of the trial court's determination that the clock started to run on 27 March 2009, when the Board's decision was reduced to writing.