SCOTT NASH DUNN, ADMINISTRATOR, CTA OF THE ESTATE OF MYRTLE GREESON CANOY, DECEASED, PLAINTIFF v. ROGER TERRY CANOY (UNMARRIED); JAMES LESLIE CANOY AND WIFE, NELLIE MAE CANOY; BRENDA FAYE CANOY BUCKLES (DIVORCED); NANCY LOU CANOY CAPPS AND HUSBAND, JOSEPH FARRELL CAPPS SR.; WILLIAM LARRY CANOY AND WIFE, FAYE VOSS CANOY; JANIE CANOY SUMNER AND HUSBAND, FARRELL B. SUMNER; RICHARD EDGAR CANOY AND WIFE, DOROTHY COBLE CANOY; HAROLD EUGENE CANOY AND WIFE, JUDITH FRANCIS CANOY; GLENN KEITH CANOY AND WIFE, SANDRA SADLON CANOY; ROBERT WAYNE CANOY AND WIFE, DELORES JOHNSON CANOY; AND JULIE H. STUBBLEFIELD, GUARDIAN AD LITEM FOR UNBORN CHILDREN; DEFENDANTS

No. COA05-794

(Filed 7 November 2006)

## 1. Judges— annoyance at attorney—recusal not required

An attorney did not demonstrate that recusal should have been allowed where the record reveals nothing that could be construed as personal bias, prejudice, or interest beyond the judge's reaction to the attorney's actions regarding a settlement agreement, for which the judge ultimately imposed sanctions. It has been held that a judge's reaction to attempts to disrupt a potential settlement does not, without more, require recusal.

## 2. Pleadings— Rule 11 sanctions—judge's authority

A judge did not lose his authority to impose Rule 11 sanctions against an attorney where the judge assumed the role of mediator, which could have interfered with his ability to preside over proceedings on the merits.

## 3. Pleadings— Rule 11 sanctions—notice—due process

An attorney's due process rights were not violated in the notice of a Rule 11 sanctions hearing where the judge told the attorney at a hearing on 16 September the ways in which he believed the attorney's conduct was unethical and unprofessional and that he was considering sanctions, accepted an affidavit from the attorney at a 30 September hearing, and questioned both the attorney and other lawyers in the case. The attorney was

**DUNN v. CANOY**

[180 N.C. App. 30 (2006)]

thus given notice of the charges against him and the opportunity to be heard.

**4. Appeal and Error— assignments of error—broadside— compliance not waived**

The technique of a broadside assignment of error followed by a list of exceptions was eliminated in 1988. Appellant here included a number of broadside assignments of error generally challenging the findings of fact, but none of the assignments of error specifically refer to any finding. Although specific assignments of error may have been referenced by the exceptions, the Court of Appeals chose not to waive compliance with rules that have been in effect for 18 years.

**5. Pleadings— Rule 11 sanction—letters to court**

Letters sent to a court seeking to influence the court to take particular action fall within the scope of Rule 11's "other papers."

**6. Appeal and Error— assignment of error to ultimate findings—no assignments of error to supporting findings**

Although an attorney appealing from Rule 11 sanctions assigned error to the finding of an improper purpose in letters he had written to the judge, he did not properly assign error to findings that he used his letters to revisit settled issues, to cause unnecessary delay, and to commandeer the drafting process contrary to the court's instructions. These binding findings support the court's ultimate finding of an improper purpose; furthermore, there was ample support in the record for the court's findings.

**7. Pleadings— Rule 11 sanctions—letters to court—improper purpose**

A court was entitled to impose Rule 11 sanctions after finding that letters from an attorney to the court met the improper purpose part of the three prongs mandating sanctions (violations of factual sufficiency, legal sufficiency, or improper purpose).

**8. Attorneys— professional conduct—letters to court**

An attorney's letters to the court did not violate 98 Formal Ethics Op. 13 (Council of the North Carolina State Bar, 1999) to the extent that they were responding to a proposed order sent directly to a trial judge without prior opportunity for comment. The judge is nevertheless free to conclude that the letters were unprofessional for other reasons.

DUNN v. CANOY

[180 N.C. App. 30 (2006)]

**9. Attorneys— professional conduct—inherent power of court—letters to court**

The trial court did not err by concluding under its inherent powers that letters from attorney during a settlement mediated by the judge violated the Rules of Professional Conduct in that they attempted to introduce new evidence, reargue the merits of the case, and cast another attorney in a bad light. They are precisely the type of communication the Council of North Carolina State Bar in 98 Formal Ethics Op. 13 (1999) described as risking improper influence upon a tribunal.

**10. Attorneys— representation of several parties—no inherent conflict—no evidence that informed consent missing**

The record contained no evidence that an attorney's representation of several children in an estate matter involved a concurrent conflict of interest or that he failed to have the necessary informed consent from his clients for an aggregate settlement.

**11. Attorneys— professional conduct—inherent powers of court—letters to judge**

There was ample support for a trial court's finding under its inherent powers that an attorney violated Rule 8.4(d) of the Rules of Professional Conduct through letters to the court along with his behavior at hearings.

**12. Attorneys; Pleadings— Rule 11 sanctions—letters to court—unprofessional conduct—sanctions remanded for further findings**

The extent of sanctions against an attorney for letters and conduct which interfered with a settlement mediated by the judge was remanded where the order did not identify the sanction as purely punitive, but indicated that the amount .was to be paid toward the opposing parties' legal fees. Even if the trial court intended that this sanction be a flat monetary amount untied to any specific attorney fees, there must be findings to explain the appropriateness of the sanction and how the court arrived at that figure.

Judge CALABRIA concurring in part and dissenting in part.

Appeal by Max D. Ballinger, attorney for several defendants, from order entered 3 March 2005 by Judge John O. Craig III in Randolph County Superior Court. Heard in the Court of Appeals 22 March 2006.

DUNN v. CANOY

[180 N.C. App. 30 (2006)]

*Max D. Ballinger, pro se, appellant.*

*No brief filed on behalf of plaintiff.*

*No brief filed on behalf of defendants.*

GEER, Judge.

Attorney Max D. Ballinger appeals from an order imposing a $5,000.00 sanction under both Rule 11 of the Rules of Civil Procedure and the trial court's inherent supervisory powers. We hold that the trial court did not err in imposing sanctions, but that the order does not contain adequate findings of fact to explain the basis for the court's selection of the sanction ultimately imposed. We, therefore, remand for entry of further findings of fact.

### Facts

Mr. Ballinger has represented several of testatrix Myrtle Greeson Canoy's children in lengthy legal proceedings regarding Ms. Canoy's estate. Under Ms. Canoy's will, one of the Canoy children, Roger, was granted a life estate in the decedent's real property. Roger refused to pay the taxes on the property, however, which ultimately resulted in litigation with his siblings.

In October 1998, pursuant to a court order, a portion of the decedent's real property not subject to the life estate was sold in order to pay outstanding taxes and close the estate. After paying various expenses, the estate's Administrator, Scott Nash Dunn, was unable to determine which defendants were entitled to the money remaining in the estate and, therefore, filed an interpleader complaint in which he sought to have the trial court order the various defendants to "interplead their respective claims and settle their claims between themselves," permit Mr. Dunn to pay the estate's balance to the Clerk of Superior Court in Randolph County, and "discharge [Mr. Dunn] from all liability in this matter." In July 2003, Mr. Ballinger, representing several of the defendants, filed an answer with counterclaims and cross-claims.

The matter was heard by Judge John O. Craig III on 10 June 2004. At the hearing, Judge Craig encouraged a settlement in which Roger would release his life estate in exchange for fee-simple title to an 18-acre parcel of the decedent's land. The remaining Canoy children would become fee-simple owners of the decedent's remaining 42 acres. Following Judge Craig's recommendation, the parties discussed various details, including the likelihood of future litigation,

DUNN v. CANOY

[180 N.C. App. 30 (2006)]

taxation, whether the consent of spouses was necessary, and outstanding fees for the administrator and the various attorneys.

After this discussion, the following exchange occurred:

MR. BALLINGER: . . . . I really appreciate [the court's] attempts to settle this matter and [sic] most gracious and we accept it.

THE COURT: Do you accept the settlement on behalf of your clients?

MR. BALLINGER: Yes, I do.

Judge Craig then summarized the agreement:

If Mr. Roger Canoy relinquishes his life estate in all of the property except the eighteen—approximately, eighteen acres that are north of the creek, then the remaining heirs will become holders of that property south of the creek as fee simple, free and clear owners of the property.

He added that the settlement "would almost have the same effect" as if Roger died, explaining that his "life estate would end and all the other heirs would then become outright owners of it because the remainder interest would come into being . . . ."

Although one Canoy child not represented by Mr. Ballinger objected to the settlement, Mr. Ballinger gave no indication that he did not approve of the settlement and explained his understanding that:

We [(Mr. Ballinger's clients)] would renounce the rights to the eighteen acres and convey the right, title and interest to the eighteen acres to Roger Canoy on that side of the creek. And Roger would renounce all rights to all the property and all the monies in the Clerk of Court or in the hands of the Administrator or anyone else. That he would renounce—he would just sign a deed.

In response to Mr. Ballinger's concerns regarding potential future claims between the parties, Judge Craig added that he understood the agreement "would be in language in which there were full and complete releases signed going every which way so that no one would have a claim against the other . . . ."

All parties then agreed to the settlement on the record and under oath. Judge Craig designated Mr. Dunn as the primary draftsman. Judge Craig then notified the parties that he would be out of the country beginning on 17 June 2004.

DUNN v. CANOY

[180 N.C. App. 30 (2006)]

On 11 June 2004, Mr. Dunn mailed a draft order to the court and provided a copy to counsel on the same date. On 14 June 2004, the court returned the order to Mr. Dunn with certain revisions. On 15 June 2004, Mr. Ballinger sent Judge Craig, with copies to counsel, a draft order that he had prepared. He stated in his letter: "Enclosed is a copy of a Consent Judgment I am prepared to have my clients sign." In a subsequent affidavit, Mr. Ballinger explained that he felt it was "easier to simply draft a proposed consent judgment rather than take on the task of trying to address Mr. Dunn's draft at that time." The following day, Mr. Ballinger sent a second letter to Judge Craig stating: "Enclosed is a copy of a Consent Judgment I am having my clients sign. Having not heard from you, I presume that as to you the enclosed is satisfactory." Mr. Ballinger explained that he believed his proposed settlement agreement would quiet title as to all who signed it and prevent further litigation.

On 25 June 2004, Mr. Dunn wrote Mr. Ballinger, advised him that his proposed consent judgment was not acceptable, and enclosed a revised version of Mr. Dunn's proposed judgment. On 1 July 2004, Mr. Dunn sent an additional revision, asking whether it was acceptable. On 28 July 2004, Mr. Dunn forwarded a final version of the consent judgment and asked that it be signed and returned by 20 August 2004. He added: "The failure of any party to comply with this request may result in a contempt motion being filed against them."

On 15 August 2004, Mr. Ballinger sent a seven-page letter to Mr. Dunn with a copy to Judge Craig raising numerous concerns about the consent judgment, stating that his clients declined to sign it, and withdrawing the "proposed settlement" embodied in Mr. Ballinger's proposed judgment. On the same date, Mr. Ballinger sent a 13-page letter directly to Judge Craig, requesting that the judge reconsider signing Mr. Dunn's proposed order. The letter stated that both Mr. Ballinger and his clients objected to Judge Craig "sign[ing] any order without further negotiation" and that they would not "sign a consent order that is contrary to that which [Mr. Ballinger's] clients would find to be acceptable."

On 1 September 2004, the court forwarded a calendar setting the matter for hearing on 16 September 2004. On 6 September 2004, Mr. Ballinger sent a 10-page letter to Judge Craig and Judge Russell G. Walker, Jr., arguing the merits of his clients' claims, requesting rulings on the merits, and expressing the opinion that the matter could not be settled without the presence of additional parties.

Following these series of letters, Mr. Dunn filed a motion requesting that Mr. Ballinger and several Canoy children be held in civil contempt for willful non-compliance with prior court orders. Judge Craig conducted a hearing on 16 September 2004 at which he informed Mr. Ballinger that he believed Mr. Ballinger's conduct had violated a North Carolina State Bar Ethics Opinion and several of the Revised Rules of Professional Conduct. Judge Craig also expressed his belief that Mr. Ballinger's description of the settlement differed from what was actually agreed to at the 10 June 2004 hearing.

At the hearing, Mr. Ballinger announced that "as far as consenting to the judgment, I have not at any time refused to consent to the judgment and will sign the thing today, if that's your order that [my clients] can't withdraw their exceptions. We respectfully submit to exactly what was in the court transcript last time. And my clients would consent to that, also." Later, Mr. Ballinger signed the back of the transcript of the 10 June 2004 hearing and handed it to his clients stating: "I asked them to sign it. But . . . I'm not refusing to sign it. I didn't recommend that they sign [the agreement reached 10 June], but they agreed to it. Therefore, I will sign it." Judge Craig suggested that if any of Mr. Ballinger's clients declined to sign the transcript, he might have a conflict of interest. Mr. Ballinger then withdrew his signature.

At the end of the hearing, Judge Craig told Mr. Ballinger: "I am not looking so much as a contempt of court citation toward you, but I am seriously going to inquire as to whether it's appropriate to impose sanctions under Rule 11." Judge Craig then scheduled an additional hearing for 30 September 2004.

At the 30 September hearing, Judge Craig accepted an affidavit from Mr. Ballinger explaining his actions. Judge Craig then questioned Mr. Ballinger and the other lawyers regarding what had occurred at the original hearing. Further, after reviewing a brief submitted by one of the other attorneys, Judge Craig concluded that he could not enter the consent judgment without consent of all the parties.

On 4 March 2005, Judge Craig entered an order concluding that Mr. Ballinger's letters dated 15 and 16 June 2004, 15 August 2004, and 6 September 2004 came within the scope of Rule 11, were interposed for an improper purpose, and justified sanctions under Rule 11. In addition, Judge Craig concluded that "Mr. Ballinger's actions during

the hearing on September 16, whereby he stated that his previous letters were entirely the fault of his clients, and his theatrical gesture of signing the consent order, were at best disingenuous concealments or facile misrepresentations to the Court since he attempted to distance himself from the contents of his own letters." He concluded that this conduct "appears to have violated Rule 1.7(a)(1) and Rule 1.8(g) of the Revised Rules of Professional Conduct" and "[i]n any event, his actions constituted a deception practiced against this Court and wasted the Court's time as well as the time of the attorneys involved, all at the ultimate expense of his clients and the other parties to these actions." Judge Craig's order stated that he chose to sanction this "improper, vexatious conduct" under the inherent powers of the court.

Judge Craig's order stated that he had considered the range of sanctions available to him, including reprimand or censure, but had concluded, in his discretion, "that a monetary sanction of $5,000 is appropriate under Rule 11 and the Court's inherent authority over proceedings to punish Mr. Ballinger for his misconduct, with the money to be paid to the Estate of Myrtle Greeson Canoy for its use in defraying the expenses and attorney fees (excluding Mr. Ballinger's fees and expenses) that have arisen as a result of the various hearings which were held after preparation for and attendance at the June 10, 2004 hearing." Judge Craig also ordered (1) that Mr. Ballinger not charge his clients for any work or expenses in connection with preparation for, or attendance at, the 30 September 2004 hearing and (2) that the matters in the order be referred to the North Carolina State Bar.

Mr. Ballinger timely appealed to this Court. We note that the record on appeal indicated that Judge Craig was the appellee. This Court entered an order *ex mero motu* stating that, although Judge Craig's order was being appealed, "Judge Craig is not now nor [w]as he ever . . . a party to this action and [he was] improperly named as a party in the record on appeal." This Court thereafter dismissed Judge Craig as a party.

I

[1] Mr. Ballinger first challenges the propriety of Judge Craig's ruling on sanctions and the process by which sanctions were imposed. We hold that he has failed to demonstrate any error.

Mr. Ballinger argues that Judge Craig should have granted his motion that the judge recuse himself from hearing any sanctions

motion. "[A] party has a right to be tried before a judge whose impartiality cannot reasonably be questioned." *State v. Fie*, 320 N.C. 626, 627, 359 S.E.2d 774, 775 (1987). Therefore, "[o]n a motion of any party, a judge should [be] disqualif[ied] . . . in a proceeding in which his impartiality may reasonably be questioned, including but not limited to instances where . . . [h]e has a personal bias or prejudice concerning a party . . . ." N.C. Code of Judicial Conduct, Canon 3(C)(1)(a).

The party moving for disqualification bears the burden of demonstrating objectively that grounds for disqualification actually exist. *Lange v. Lange*, 357 N.C. 645, 649, 588 S.E.2d 877, 880 (2003). This Court has explained that "[t]he moving party, supported by affidavits, may meet his burden by presenting 'substantial evidence that there exists such a personal bias, prejudice or interest on the part of the judge that he would be unable to rule impartially.' " *County of Johnston v. City of Wilson*, 136 N.C. App. 775, 778, 525 S.E.2d 826, 828 (2000) (quoting *In re Nakell*, 104 N.C. App. 638, 647, 411 S.E.2d 159, 164 (1991), *appeal dismissed and disc. review denied*, 330 N.C. 851, 413 S.E.2d 556 (1992)).

Mr. Ballinger submitted no affidavits providing any evidence of personal bias, prejudice, or interest. Instead, Mr. Ballinger's sole argument both to Judge Craig and on appeal is that Judge Craig's annoyance with Mr. Ballinger's disruption of the settlement warranted recusal. This Court has specifically held that a judge's reaction to attempts to disrupt a potential settlement does not, without more, require recusal:

> We note that a trial judge's decision to "explor[e] settlement possibilities [is] a function to be commended to all trial judges in civil cases" and is not generally a ground for disqualifying a judge. *Roper v. Thomas*, 60 N.C. App. 64, 76, 298 S.E.2d 424, 431 (1982), *disc. review denied*, 308 N.C. 191, 302 S.E.2d 244 (1983). Moreover, even where a trial judge becomes ostensibly angry at the failure of settlement negotiations, his disqualification is not necessarily required under the law. *State v. Kamtsiklis*, 94 N.C. App. 250, 258-59, 380 S.E.2d 400, 404, *appeal dismissed, disc. review denied*, 325 N.C. 711, 388 S.E.2d 466 (1989).

*Melton v. Tindall Corp. (In re Pedestrian Walkway Failure)*, 173 N.C. App. 237, 253, 618 S.E.2d 819, 829-30 (2005), *disc. review denied*, 380 N.C. 290, 628 S.E.2d 382 (2006). Beyond Judge Craig's

DUNN v. CANOY

[180 N.C. App. 30 (2006)]

reaction regarding Mr. Ballinger's actions in connection with the settlement agreement, the record reveals nothing that could be construed as demonstrating any personal bias, prejudice, or interest by Judge Craig.

Indeed, to require recusal in this instance would be to require recusal whenever an attorney engages in sanctionable conduct offending or irritating a judge. Not surprisingly, Mr. Ballinger has cited no authority requiring that a new judge determine whether conduct before another judge warrants sanctions. *See Nakell,* 104 N.C. App. at 648, 411 S.E.2d at 165 ("Our examination of the record reveals no bias, prejudice, or proof that would require the judge *before whom the contempt was committed* to recuse himself from conducting a hearing [on the contempt]." (emphasis added)). In the absence of some other indication that Judge Craig harbored personal bias or prejudice against Mr. Ballinger, or was somehow improperly interested in the outcome of this case, we conclude that Mr. Ballinger has failed to demonstrate that the motion for recusal should have been allowed.

[2] Mr. Ballinger alternatively contends that Judge Craig lacked authority to address sanctions because Judge Craig had improperly assumed the role of a mediator in the proceedings. It is true that Canon 5(E) of the North Carolina Code of Judicial Conduct provides that "[a] judge should not act as an arbitrator or mediator." Additionally, Mr. Ballinger is correct that, at the 10 June 2004 hearing, Judge Craig expressed his personal opinions on the case and stated that "in so giving and expressing my opinion and telling you what I think is a good idea, it probably removes me from that air of neutrality or impartiality and would, therefore, make it difficult for me to ethically hear any of the motions."

While, as Judge Craig acknowledged, these remarks could interfere with his ability to preside over continued proceedings regarding the merits of the action, Mr. Ballinger has cited no authority for his conclusion that "Judge Craig lost his authority to judicially discipline [Mr. Ballinger] . . . ." *See* N.C.R. App. P. 28(b)(6) ("Assignments of error . . . in support of which no reason or argument is stated *or authority cited,* will be taken as abandoned." (emphasis added)). Nor have we found any authority supporting Mr. Ballinger's position. Accordingly, Mr. Ballinger has failed to demonstrate that Judge Craig's conduct at the 10 June hearing stripped him of authority to impose sanctions.

**[3]** Mr. Ballinger also argues that he was denied procedural due process under the federal and state constitutions because he was not given adequate notice of the charges, sufficient opportunity to respond, permission to call witnesses, or a list identifying the evidence upon which the court was basing its sanction order. The record indicates otherwise.

" 'Notice and an opportunity to be heard prior to depriving a person of his property are essential elements of due process of law which is guaranteed by the Fourteenth Amendment of the United States Constitution.' " *Griffin v. Griffin*, 348 N.C. 278, 280, 500 S.E.2d 437, 438 (1998) (quoting *McDonald's Corp. v. Dwyer*, 338 N.C. 445, 448, 450 S.E.2d 888, 891 (1994)). To receive adequate notice, "[t]he bases for the sanctions must be alleged. . . . In order to pass constitutional muster, the person against whom sanctions are to be imposed must be advised in advance of the charges against him." *Id.*, 500 S.E.2d at 439.

Here, the court held two hearings regarding Mr. Ballinger's conduct. At the 16 September hearing, Judge Craig specifically told Mr. Ballinger in what ways he believed Mr. Ballinger's conduct had run afoul of 98 Formal Ethics Op. 13 (1999) and Revised Rules of Professional Conduct 1.7(a)(1), 1.8(g), and 8.4(d). Judge Craig also specifically informed Mr. Ballinger that he was considering imposing Rule 11 sanctions. At the 30 September hearing, the court accepted an affidavit from Mr. Ballinger and questioned both Mr. Ballinger as well as the other lawyers in the case. Mr. Ballinger was thus given notice of the "charges" against him in advance and was given an opportunity to be heard. We hold that Mr. Ballinger's due process rights were fully protected.

## II

Mr. Ballinger next argues that the trial court erred by imposing sanctions under Rule 11. Rule 11 provides:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. . . . The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or

reversal of existing law, and that it is not interposed for any improper purpose . . . .

N.C.R. Civ. P. 11(a).

Our Supreme Court has held that "[t]he trial court's decision to impose or not to impose mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a) is reviewable *de novo* as a legal issue." *Turner v. Duke Univ.*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989). In describing the nature of this "*de novo* review," the Court has explained:

> [T]he appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence. *If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a).*

*Id.* (emphasis added).

A. The Findings of Fact

[4] With respect to Judge Craig's findings of fact, we must first determine whether Mr. Ballinger has properly assigned error to them. Mr. Ballinger has failed to comply with the current version of the Appellate Rules: he lists 19 assignments of error and follows each with a list of "exceptions," which, in turn, refer to individual "exceptions" written into a copy of Judge Craig's order. As this Court reminded attorneys in *White v. Weyerhaeuser Co.*, 167 N.C. App. 658, 606 S.E.2d 389 (2005), this manner of assigning error was eliminated in 1988:

> [A]pparently operating based on an outdated version of our Appellate Rules, Weyerhaeuser has assigned error only to certain conclusions of law, but under each of the assignments of error has listed "Defendant's Exception[s]," referring to "exception[s]" typed onto a copy of the Commission's Opinion and Award. . . .
>
>     . . . .
>
> In 1988, Rule 10 was amended "to put an end to the formality of marking exceptions in the transcript of the proceedings as formerly required by Rule 10(b)(2). Accordingly, the language of the former Rule 10(b)(2), requiring that the record on appeal reflect

a separate exception for each finding of fact assigned as error, was deleted from the current version of Rule 10(b)(2)." *State v. Canady,* 330 N.C. 398, 404-05, 410 S.E.2d 875, 879 (1991) (Meyer, J., dissenting). . . .

. . . .

Under [the current Rule 10], an appellant is required to specifically assign error to each finding of fact that it contends is not supported by competent evidence. "[F]indings of fact to which [an appellant] has not assigned error and argued in his brief are conclusively established on appeal." *Static Control Components, Inc. v. Vogler,* 152 N.C. App. 599, 603, 568 S.E.2d 305, 308 (2002). Thus, "[a] single assignment [of error] generally challenging the sufficiency of the evidence to support numerous findings of fact . . . is broadside and ineffective" under N.C.R. App. P. 10. *Wade v. Wade,* 72 N.C. App. 372, 375-76, 325 S.E.2d 260, 266, *disc. review denied,* 313 N.C. 612, 330 S.E.2d 616 (1985). Since Weyerhaeuser has failed to challenge the sufficiency of the evidence to support the . . . specific findings of fact, they are binding on appeal under the current rules.

*Id.* at 659-61, 606 S.E.2d at 392-93 (alterations in original).

In this case, Mr. Ballinger includes a number of broadside assignments of error generally challenging the findings of fact. None of the assignments of error specifically refers to any finding of fact. Although Mr. Ballinger may have referenced specific assignments of error by use of his exceptions, that approach is inconsistent with the current appellate rules, and, given the fact that these rules have been in effect for 18 years, we choose not to exercise our discretion to waive compliance with those rules. *See Viar v. N.C. Dep't of Transp.,* 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) ("It is not the role of the appellate courts . . . to create an appeal for an appellant.").

The only findings of fact that are specifically described in the assignments of error—although not by number—are Judge Craig's findings (1) that Mr. Ballinger's writings were filed for an improper purpose, (2) that his conduct was improper and vexatious, (3) that he represented a client whose interest was or was likely to be adverse to another client, and (4) that he participated in an aggregate settlement without obtaining proper consent from his clients. These findings will be addressed below in connection with each of Mr. Ballinger's overall arguments. Because Mr. Ballinger has not properly assigned error to any of the other findings of fact, they are binding on appeal.

DUNN v. CANOY

[180 N.C. App. 30 (2006)]

B. Applicability of Rule 11

[5] Mr. Ballinger contends that his June, August, and September let-
ters do not fall within the scope of Rule 11. Judge Craig, however,
concluded that Rule 11's reference not only to motions and pleadings,
but also "other paper[s] of a party represented by an attorney" made
Rule 11 applicable. N.C.R. Civ. P. 11(a). The question whether letters
to judges may constitute "other papers" under Rule 11 has not yet
been addressed by North Carolina's appellate courts. *Compare
Williams v. Hinton*, 127 N.C. App. 421, 424, 490 S.E.2d 239, 241 (1997)
(Rule 11 held not to apply because failure to notify of scheduling con-
flict not a "pleading, motion, or other paper"); *Ward v. Lyall*, 125 N.C.
App. 732, 735, 482 S.E.2d 740, 742, *disc. review denied*, 346 N.C. 290,
487 S.E.2d 573 (1997) (Rule 11 held not to apply because failure to
promptly serve the summons and complaint not a pleading, motion,
or other paper). Decisions under the federal Rule 11 are, however,
considered instructive in interpreting our rule. *Turner*, 325 N.C. at
164, 381 S.E.2d at 713.

As the First Circuit has noted: "Courts have been properly reluc-
tant to characterize a letter generally as an 'other paper' in weighing
Rule 11 sanctions." *Legault v. Zambarano*, 105 F.3d 24, 27 (1st Cir.
1997). *See also Curley v. Brignoli Curley & Roberts, Assocs.*, 128
F.R.D. 613, 616 (S.D.N.Y. 1989) ("The contention . . . that Rule 11
should apply to any paper sent to the court, such as a letter, is not
supportable."). When, however, a letter is sent to a judge with the
intent that it influence the judge to take some action, federal courts
have considered the letter to be in effect a motion subject to Rule 11.
*See Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (In re
Highgate Equities, Ltd.)*, 279 F.3d 148, 154 (2d Cir. 2002) ("Courts
have generally [applied Rule 11 to letters] only where the letter in
question was in effect a motion in disguise, recognizing that failure to
sanction in such cases would elevate form over substance."); *Legault*,
105 F.3d at 27 (holding that Rule 11 applied to a letter sent with the
intent to influence the court with respect to injunctive relief); *Lopez
v. Constantine*, 94 Civ. 5921, 95 Civ. 5915, 1997 U.S. Dist. LEXIS 8625,
at *9 n.6, 1997 WL 337510, at *3 n.6 (S.D.N.Y. June 18, 1997) ("Those
cases in which a letter has served as the basis for Rule 11 sanctions
have involved instances in which a party has sought to have a court
take action in reliance on it.").

We agree with these courts that the reference to "other papers"
should, at least, encompass letters forwarded to a court that seek to
influence the court to take particular action. To hold otherwise would

DUNN v. CANOY

[180 N.C. App. 30 (2006)]

encourage parties to avoid compliance with Rule 11 by submitting letters rather than formal motions and pleadings—truly an undesirable result. Mr. Ballinger's letters were sent with the intent of persuading Judge Craig not to enter Mr. Dunn's proposed order and to revisit the merits of his clients' claims. The letters, therefore, fall within the scope of Rule 11.

**[6]** Mr. Ballinger next challenges the trial court's finding that his letters were "interposed for an improper purpose." "[W]hether a pleading, motion or other paper was filed for an improper purpose must be reviewed under an objective standard." *Bryson v. Sullivan*, 330 N.C. 644, 663, 412 S.E.2d 327, 337 (1992). An improper purpose includes "caus[ing] unnecessary delay or needless increase in the cost of litigation." N.C.R. Civ. P. 11(a). *See also Brown v. Hurley*, 124 N.C. App. 377, 382, 477 S.E.2d 234, 238 (1996) ("An improper purpose is 'any purpose other than one to vindicate rights . . . or to put claims of right to a proper test.' " (quoting *Mack v. Moore*, 107 N.C. App. 87, 93, 418 S.E.2d 685, 689 (1992)).

Although we have concluded that Mr. Ballinger assigned error to the finding of an improper purpose, he did not properly assign error to the trial court's other findings that he used his letters to revisit settled issues, to cause unnecessary delay, and to commandeer the drafting process contrary to the court's instructions. These findings are binding on appeal and support the trial court's ultimate finding that the letters were interposed for an improper purpose. *See, e.g., Turner*, 325 N.C. at 167, 381 S.E.2d at 715 (disrupting opposing counsel's trial preparation constituted an improper purpose); *Davis v. Durham Mental Health/Dev. Disabilities/Substance Abuse Area Auth.*, 165 N.C. App. 100, 109-10, 598 S.E.2d 237, 243-44 (2004) (improper purpose found when plaintiff sued in retaliation and in order to gain leverage in negotiations).[1]

**[7]** Once the trial court found that Mr. Ballinger's letters met the improper purpose prong of Rule 11, it was entitled to impose sanctions. *See Dodd v. Steele*, 114 N.C. App. 632, 635, 442 S.E.2d 363, 365 ("There are three parts to a Rule 11 analysis: (1) factual sufficiency, (2) legal sufficiency, and (3) improper purpose. A violation of any one

---

1. We note, nonetheless, that our review of the record reveals ample support for Judge Craig's findings on this issue. Indeed, Mr. Ballinger admits in his brief on appeal that he "was attempting . . . to resolve the matter by abandoning the 'settlement' and letting another Court resolve the matters at issue between the parties or to attempt to bring other parties in and try to work towards a settlement or resolution by trial after they were brought in."

of these requirements mandates the imposition of sanctions under Rule 11." (internal citation omitted)), *disc. review denied*, 337 N.C. 691, 448 S.E.2d 521 (1994). We, therefore, uphold Judge Craig's decision to impose sanctions under Rule 11.

## III

[8] Mr. Ballinger also challenges Judge Craig's decision to impose sanctions under the inherent powers of the court. "North Carolina case law is . . . clear that the exercise of a court's inherent authority is reviewed for abuse of discretion." *Couch v. Private Diagnostic Clinic*, 146 N.C. App. 658, 663, 554 S.E.2d 356, 361 (2001), *appeal dismissed and disc. review denied*, 355 N.C. 348, 563 S.E.2d 562 (2002). A trial court's inherent authority encompasses not only the "power but also the duty to discipline attorneys, who are officers of the court, for unprofessional conduct." *In re Hunoval*, 294 N.C. 740, 744, 247 S.E.2d 230, 233 (1977). Unprofessional conduct subject to this power and duty "includes misconduct, malpractice, or deficiency in character, . . . and any dereliction of duty except mere negligence or mismanagement." *Id.* (internal quotation marks omitted).

Here, in identifying unprofessional conduct, the trial court concluded that Mr. Ballinger violated 98 Formal Ethics Op. 13 when sending his letters to the court. 98 Formal Ethics Op. 13 addresses whether "a lawyer [may] communicate in writing with a judge or other judicial official about a proceeding that is pending before the judge or judicial official[.]" The opinion acknowledges that a broad reading of the applicable ethics rules would permit "unlimited written communications" so long as a copy is simultaneously provided to the other parties and the communication is not "prejudicial to the administration of justice." *Id.* Nevertheless, the opinion concludes:

> To avoid the appearance of improper influence upon a tribunal, informal written communications with a judge or other judicial official should be limited to the following:
>
> 1) Written communications, such as a proposed order or legal memorandum, prepared pursuant to the court's instructions;
>
> 2) Written communications relative to emergencies, changed circumstances, or scheduling matters that may affect the procedural status of a case such as a request for a continuance due to the health of a litigant or an attorney;
>
> 3) Written communications sent to the tribunal with the consent of the opposing lawyer or opposing party if unrepresented; and

4) Any other communication permitted by law or the rules or written procedures of the particular tribunal.

*Id.*

In the present case, the trial court concluded that Mr. Ballinger's 15 and 16 June 2004 letters were sent contrary to the court's instructions that directed Mr. Dunn to draft the proposed order. We note, however, that Mr. Ballinger's letters were *responding to* Mr. Dunn's proposed order and explaining why, according to Mr. Ballinger, that order was in error and proposing an alternative order. We cannot agree with the trial court that a lawyer necessarily commits professional misconduct if he simply sends a letter in response to a proposed order that was submitted directly to the trial judge without prior opportunity for the lawyer to comment on the draft order.

A contrary construction of the Rules of Professional Conduct would be inconsistent with 97 Formal Ethics Op. 5 (1998), which provides:

> [F]ailure to give the opposing lawyer an opportunity to comment upon or object to a proposed order before it is submitted to the judge is unprofessional and may be prejudicial to the administration of justice. It is the more professional practice for a lawyer to provide the opposing counsel with a copy of a proposed order in advance of delivering the proposed order to the judge and *thereby give the opposing counsel an adequate opportunity to comment upon or object to the proposed order.*
>
> At a minimum, Rule 3.5(a)(3)(ii) requires a lawyer to furnish the opposing lawyer with a copy of the proposed order simultaneously with its delivery to the judge and, if the proposed order is furnished to the opposing counsel simultaneously, *Rule 3.3(d) requires the lawyer to disclose to the judge in the ex parte communication that the opposing lawyer has received a copy of the proposed order but has not had an opportunity to present any comments or objections to the judge.*

(Emphases added.) This opinion thus anticipates that a party will have an opportunity to present comments and objections regarding the draft order to the judge. To sanction an attorney for presenting such comments or objections in a letter rather than some formal document would seem to elevate form over substance, especially in light of our holding in this case that such letters are subject to Rule 11.

DUNN v. CANOY

[180 N.C. App. 30 (2006)]

In short, to the extent that Mr. Ballinger's letters were responding to Mr. Dunn's proposed order, we hold that they did not violate 98 Formal Ethics Op. 13. Nevertheless, Judge Craig was free to conclude, as he did, that they were unprofessional for other reasons, such as violating Rule 11.

[9] We reach a different conclusion with respect to Mr. Ballinger's 15 August and 6 September 2004 letters. Those letters attempted to introduce new evidence, reargue the merits of the case, and cast Mr. Dunn in a bad light. They are precisely the type of communication 98 Formal Ethics Op. 13 described as risking improper influence upon a tribunal. *See* 98 Formal Ethics Op. 13 ("[I]nformal *ex parte* written communications, whether addressed directly to the judge or copied to the judge as in this inquiry, may be used as an opportunity to introduce new evidence, to argue the merits of the case, or to cast the opposing party or counsel in a bad light."). Judge Craig did not, therefore, err in concluding that these letters violated the Revised Rules of Professional Conduct.

[10] Judge Craig also concluded that Mr. Ballinger violated Rule 1.7(a)(1) and Rule 1.8(g) of the Revised Rules of Professional Conduct. Rule 1.7(a) provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." Rule 1.8(g) provides that "[a] lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, . . . unless each client gives informed consent, in a writing signed by the client."

We agree with Mr. Ballinger that the record contains no evidence suggesting that Mr. Ballinger's representation of several of the Canoy children involved a concurrent conflict of interest or that he failed to have the necessary informed consent from his clients regarding the aggregate settlement. Nor do those findings of fact not assigned as error support the conclusion that Mr. Ballinger violated these provisions of the Rules of Professional Conduct. Judge Craig appeared to be focusing on Mr. Ballinger's conduct during the September hearings, but that conduct does not necessarily violate Rule 1.7(a) or Rule 1.8(g).

[11] Judge Craig, however, also concluded that Mr. Ballinger violated Rule 8.4(d), which provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." Judge Craig's numerous findings regarding Mr. Ballinger's letters, his attempts "to reopen virtually all of the points of con-

tention . . . that had been laid to rest during the negotiation of the settlement on June 10," and Mr. Ballinger's behavior at the hearings provide ample support for Judge Craig's conclusion that Mr. Ballinger violated this rule.

In sum, with respect to the imposition of sanctions under the trial court's inherent powers, we conclude that Judge Craig erred when he determined that Mr. Ballinger's 15 and 16 June 2004 letters violated 98 Formal Ethics Op. 13 and that Mr. Ballinger's representation violated Revised Rules of Professional Conduct 1.7(a)(1) and 1.8(g). We conclude Judge Craig did not err, however, when he concluded that Mr. Ballinger's 15 August and 6 September 2004 letters violated 98 Formal Ethics Op. 13 and that Mr. Ballinger's conduct violated Revised Rule of Professional Conduct 8.4(d).

Although " 'questions of propriety and ethics are ordinarily for the consideration of the [North Carolina State] Bar' because that organization was expressly created by the legislature to deal with such questions, . . . the power to regulate the conduct of attorneys is held concurrently by the Bar and the court." *Gardner v. N.C. State Bar*, 316 N.C. 285, 287-88, 341 S.E.2d 517, 519. (1986) (quoting *McMichael v. Proctor*, 243 N.C. 479, 485, 91 S.E.2d 231, 235 (1956)). The trial court's proper conclusions regarding Mr. Ballinger's violations of the Revised Rules of Professional Conduct justify the imposition of sanctions under the court's inherent powers, and Mr. Ballinger has failed to demonstrate that the court abused its discretion in doing so.

IV

**[12]** Finally, Mr. Ballinger contends that the trial court erred with respect to the amount of the sanctions imposed. In reviewing the appropriateness of a particular sanction under either Rule 11 or the inherent powers of the court, we exercise an abuse of discretion standard. *Turner*, 325 N.C. at 165, 381 S.E.2d at 714 (Rule 11); *Couch*, 146 N.C. App. at 667, 554 S.E.2d at 363 (inherent powers).

The trial court in the present case sanctioned Mr. Ballinger $5,000.00, explaining only that this sum was to be paid to the decedent's estate for "defraying the expenses and attorney fees (excluding Mr. Ballinger's fees and expenses) that have arisen as a result of the various hearings which were held after preparation for and attendance at the June 10, 2004 hearing." Judge Craig's findings of fact are not sufficient to permit this Court to review the sanction imposed.

The order on appeal does not explain why the figure of $5,000.00 was selected or why the trial court considered it an appropriate sanction. Although the order directs that the amount be paid to the estate to defray attorneys' fees and expenses, the order contains no findings regarding the fees and expenses incurred.

A trial court, in making an award of attorneys' fees, must explain why the particular award is appropriate and how the court arrived at the particular amount. *See, e.g., Davis v. Wrenn*, 121 N.C. App. 156, 160, 464 S.E.2d 708, 711 (1995) (reviewing an award of fees under Rule 11), *cert. denied*, 343 N.C. 305, 471 S.E.2d 69 (1996). Specifically, "an award of attorney's fees usually requires that the trial court enter findings of fact as to the time and labor expended, skill required, customary fee for like work, and experience or ability of the attorney based on competent evidence." *Couch*, 146 N.C. App. at 672, 554 S.E.2d at 366 (remanding for further findings with respect to an award of fees under the inherent power of the court).

The dissent contends that "this case involves a purely punitive sanction," and, as a result, no findings of fact were necessary for this Court to evaluate the appropriateness of the sanction. The disagreement between this opinion and the dissent, however, illustrates why additional explanation is necessary. Nowhere in the order does the trial court identify this sanction as "a purely punitive sanction," if that was indeed the trial court's intent. On the other hand, the order states that at least one of the sanction's purposes is to compensate other parties for attorneys' fees and expenses. We cannot, therefore, determine from the face of the order the precise nature of the sanction.

Even if the trial court intended that this sanction be a flat monetary amount untied to any specific attorneys' fees, our case law has never held that appropriate findings of fact—based on competent evidence—are unnecessary to support a trial court's choice of sanction. *See Hummer v. Pulley, Watson, King & Lischer, P.A.*, 140 N.C. App. 270, 285, 536 S.E.2d 349, 358 (2000) (reversing sanction of $2,500.00 imposed as compensation for an increase in attorney's malpractice insurance deductible when the order contained no finding that he had purchased such insurance and the evidence did not support a finding that the increase was due to the pending suit); *Davis*, 121 N.C. App. at 160, 464 S.E.2d at 711 (reversing and remanding for additional findings when "there is nothing in the order to explain the appropriateness of the sanction imposed ($6,692 in attorney's fees) or to indicate how the court arrived at that figure"); *Rivenbark v. Southmark*

*Corp.*, 93 N.C. App. 414, 420-21, 378 S.E.2d 196, 200-01 (1989) (holding that "sanctions may not be imposed mechanically," but "[r]ather, the circumstances of each case must be carefully weighed so that the sanction properly takes into account the severity of the party's disobedience").

While the same findings of fact may not be necessary for a flat monetary amount as for an award of attorneys' fees, there must still be findings to explain, as *Davis* holds, the appropriateness of the sanction and, if it involves a monetary amount, how the court arrived at that figure. Contrary to the suggestion of the dissent, neither *Davis Lake Cmty. Ass'n v. Feldmann*, 138 N.C. App. 322, 530 S.E.2d 870 (2000), nor *Oglesby v. S.E. Nichols, Inc.*, 101 N.C. App. 676, 401 S.E.2d 92, *disc. review denied*, 329 N.C. 270, 407 S.E.2d 839 (1991), involving only modest sanctions of $400.00 and $500.00 respectively, have any language holding otherwise. The opinions contain no indication that the sanctioned parties in those cases challenged the adequacy of the findings of fact regarding the nature of the sanction. In fact, *Oglesby* did not involve a punitive sanction, but rather was an award "to pay expenses incurred by defendant's attorney in responding to" the motion filed in violation of Rule 11. *Id.* at 681, 401 S.E.2d at 95.

In this case, without any findings of fact regarding the attorneys' fees and expenses incurred, it is impossible to determine whether the $5,000.00 awarded to the estate for expenses and fees "that have arisen as a result of the various hearings which were held after preparation for and attendance at the June 10, 2004 hearing" exceeds the reasonable fees and expenses actually incurred. While the actual fees and expenses may well be less than $5,000.00, we cannot assume that to be the case on appeal. In the event that the sum exceeds the actual, reasonable fees and expenses, there is no explanation as to why the trial court feels that the excess should be awarded to the estate. *See Lowder v. All Star Mills, Inc.*, 103 N.C. App. 500, 501, 405 S.E.2d 774, 775 (upholding Rule 11 sanction awarding $2,918.82 in attorneys' fees and expenses and an additional $1,000.00 to be paid to the clerk of superior court as an additional sanction), *disc. review denied*, 330 N.C. 118, 409 S.E.2d 595 (1991). Only if the trial court includes findings of fact regarding how it came to choose the particular sanction imposed can this Court determine whether or not the sanction represents an abuse of discretion. *Cf. Spicer v. Spicer*, 168 N.C. App. 283, 287, 607 S.E.2d 678, 682 (2005) (holding that, even under an abuse of discretion standard, "[t]he trial court must . . . make sufficient find-

**DUNN v. CANOY**

[180 N.C. App. 30 (2006)]

ings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that under-lie it, represent a correct application of the law").

We, therefore, affirm the trial court's imposition of sanctions against Mr. Ballinger. We remand, however, for further findings on the issue of the extent of the sanction.

Affirmed in part, reversed and remanded in part.

Judge McGEE concurs.

Judge CALABRIA concurs in part and dissents in part in a separate opinion.

CALABRIA, Judge, concurring in part and dissenting in part.

I concur with the majority opinion in parts I through III. I respect-fully dissent on the issue of whether additional findings were required to support the amount of a punitive sanction.

This Court reviews an order imposing a Rule 11 sanction *de novo*. *Turner v. Duke Univ.*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989). Specifically, we determine 1) whether the trial court's conclusions of law support its judgment or determination, 2) whether the trial court's conclusions of law are supported by its findings of fact, and 3) whether the findings of fact are supported by sufficient evidence. *Id.* After this Court determines a Rule 11 sanction was properly imposed, then the amount of the sanction is reviewed for an abuse of discre-tion. *Id.*, 325 N.C. at 165, 381 S.E.2d at 714. "Under the abuse-of-dis-cretion standard, we review to determine whether a decision is man-ifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Mark Group Int'l, Inc. v. Still*, 151 N.C. App. 565, 566, 566 S.E.2d 160, 161 (2002).

Specific findings of fact are required for this Court to conduct a *de novo* review of the *imposition* of sanctions. However, the trial court is not required to make additional findings regarding the *amount* of the properly imposed sanction.

The majority quotes *Spicer v. Spicer*, 168 N.C. App. 283, 607 S.E.2d 678 (2005), to support its contention that findings of fact must be made regarding the monetary amount of a sanction. However, the majority's reliance upon *Spicer* is misplaced. The majority opines that

*Spicer* held that "even under an abuse of discretion standard, 'the trial court must, however, make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law.' " Upon a thorough reading of *Spicer*, it is clear that the above quoted language applied only to the review of a child support order which deviated from the guidelines for further findings about the child's specific needs. *See Spicer*, 168 N.C. App. at 287, 607 S.E.2d at 682. There is no indication that the language quoted by the majority bears directly or indirectly upon the imposition of sanctions.

I also disagree with the majority's reliance upon *Davis v. Wrenn*, 121 N.C. App. 156, 464 S.E.2d 708 (1995), *cert. denied*, 343 N.C. 305, 472 S.E.2d 69 (1996). In *Davis*, the trial court failed to make findings of fact supporting an imposition of a sanction based upon the plaintiff's alleged Rule 11 violations. *Id.*, 121 N.C. App. at 160, 464 S.E.2d at 711. This Court remanded the case to the trial court for findings of fact to support imposing a Rule 11 sanction. In so doing, this Court also noted that the trial court failed to make findings regarding the amount of attorney's fees. *Id.* However, *Davis* did not specifically hold that findings of fact must be made regarding the *amount* of an imposed sanction regardless of the nature of the sanction.

The court in the case before us ordered a purely punitive sanction to defray the Estate of Myrtle Greeson Canoy's expenses and attorney's fees. Unlike the award of attorney's fees in *Davis*, the sanction in this case was imposed to "punish Mr. Ballinger for his misconduct." As such, no findings were necessary to determine the attorney's time and labor expended, skill required, customary fee for like work, and experience or ability.

Our courts have previously upheld a punitive sanction without requiring specific findings of fact as to the amount of the sanction. *Davis Lake Community Ass'n v. Feldmann*, 138 N.C. App. 322, 323, 530 S.E.2d 870, 871 (2000) (trial court's sanction of $400.00 for rule violations upheld with no mention of requiring findings of fact as to the amount); *Oglesby v. S.E. Nichols, Inc.*, 101 N.C. App. 676, 681, 401 S.E.2d 92, 95 (1991) (trial court's sanction of $500.00 to pay "to the clerk of superior court for the use and benefit of defendant's counsel" upheld with no analysis regarding the findings of fact). The majority distinguishes *Davis Lake Community* and *Oglesby* by calling the sanctions "modest sanctions." However, in these cases, the court had

discretion to determine whether a "modest sanction" or any sanction was warranted.

In *Ward v. Lyall*, 125 N.C. App. 732, 482 S.E.2d 740 (1997), we examined the appropriateness of a purely punitive monetary sanction of $8,500.00 imposed for not only Rule 11 violations but also failing to promptly serve a summons and complaint. We held that failure to promptly serve a complaint and summons was not a violation within the scope of Rule 11, and the trial court's imposition of sanctions, which included these violations, was not properly imposed. *Id.*, 125 N.C. App. at 735, 482 S.E.2d at 742. Remand was necessary to separate a proper sanction from an improper sanction. We reasoned:

> The trial court's order states that it arrived at the appropriate monetary sanction imposed upon plaintiff by generally considering, *inter alia*, the severity of the violations and the amount necessary to deter further misconduct. Since the trial court did not impose separate sanctions for each type of misconduct, it is impossible for us to determine how much of the $8,500.00 in monetary sanctions stemmed from the trial court's improper sanctioning of plaintiff for his actions in serving the summons and complaint. For this reason, we remand this matter to the trial court for a new hearing to determine the appropriate amount of sanctions to be imposed under Rule 11.

*Id.*, 125 N.C. App. at 735, 482 S.E.2d at 742-43.

In the case before us, the majority has determined that the order contained adequate findings of fact to support the imposition of sanctions. Specifically, the trial court found that Ballinger did not obtain the consent of the parties before mailing letters along with an unsolicited draft of the consent judgment to the judge. Also, Ballinger wrote additional letters to the court refusing to sign the consent judgment prepared by Mr. Dunn. In the letters, Mr. Ballinger also attempted to readdress issues that had been resolved in open court when his clients gave their consent to the settlement. Ballinger again mailed a letter in which he refused to sign any consent agreement. During a 16 September 2004 hearing, Ballinger stated that he had not "at any time refused to consent to the judgment and will sign the thing today." Ballinger then proceeded to sign the consent order on behalf of his clients, but withdrew his signature when he was informed by the court that signing the order would create a conflict of interest between him and his clients.

The trial court's findings of fact demonstrate the severity of Ballinger's rule violations and these same findings are sufficient to support a finding that the sanction in this case was properly imposed. Additionally, the trial judge explained in his order his reason for imposing a $5,000.00 sanction.

> The Court has considered the full panoply of options available to it in considering whether to impose sanctions against Mr. Ballinger, including the lesser sanctions of reprimand or censure, and running to more severe sanctions such as the suspension of Mr. Ballinger's law license or substantial monetary penalties of up to $10,000. The Court concludes, in its discretion, that a monetary sanction of $5,000 is appropriate under Rule 11 and the Court's inherent authority over proceedings to punish Mr. Ballinger for his misconduct . . . .

The findings made by the trial court and the reasoning in support of imposing a sanction are not manifestly unsupported by reason or so arbitrary that they could not have been the result of a reasoned decision. On the contrary, the trial court's reasoning is sufficient to allow us to determine that sufficient findings of fact support the sanction imposed.

Since I believe the majority's decision requiring the court to make specific findings of fact as to the *amount* of a punitive sanction is not required by our statutes or case law, I respectfully dissent on this issue.